GULF, COLORADO & SANTA FE RAILWAY COMPANY v. WILL LEVI.

No. 2854.

**1.  Common Carrier—Liability—Mobs.**—For failure to carry and deliver, the carrier can not excuse himself by reason of the fact that through human agency not under his control, this was prevented, without fault on his part.

**2.  Delay Caused Without Fault—Strikes.** — Where the goods are actually transported and delivered, but the time of delivery was delayed, such delay, if caused by mobs, strikes, or other causes not under control of the carrier, may be excused; his duty then remains that he omit no reasonable effort to secure the safety of the goods.

**3.  Damages from Delay.**—In such case, if the delay be excusable and due care be taken to protect against injury to the goods, then for damage naturally resulting from the delay the carrier is not responsible; e. g., for decay in fruit, fall in price during the time covered by the delay, etc.

**4.  Labor Strikes.**—For delay caused by labor strikes a railway is excused, upon taking due care of the freight the subject of complaint.   See facts held to be a good answer.

APPEAL from Tarrant.   Tried below before Hon. R. E. Beckham. The opinion states the case.

*Shepard & Miller,* for appellant.—The court erred in sustaining the plaintiff's exceptions to the third paragraph of defendant's second amended original answer, wherein defendant specially pleaded in excuse of its failure to promptly carry and deliver plaintiff's car load of lemons that when said car, in due and diligent course of carriage, arrived at Temple, Bell County, Texas, an overpowering mob of rioters and disorderly persons by force and arms seized upon the trains and property of defendant and detached the said car and prevented the carriage of same, and detained it till the injury to the fruit contained therein was done, notwithstanding the diligent efforts of defendant to retake its property and transport said car.   Greismer v. Railway, 102 N. Y., 563; Railway v. Hazen, 84 Ill., 36; Railway v. Hollowell, 65 Ind., 188; Railway v. Bennett, 6 Am. and Eng. Ry. Cases, 391, and note; Wertheim v. Railway, 17 Blatch., 421.

*B. P. Ayres,* for appellee.—The court did not err in sustaining plaint-

iff's exceptions to defendant's special plea attempting to avoid liability by pleading an interference by a mob of strikers and disorderly persons, a common carrier being liable for all losses except such as may arise from the act of God, the public enemy, the fault of the party complaining, or the inherent quality of the property. Rev. Stats., arts. 277, 278; Chevallier v. Straham, 2 Texas, 122; Philleo v. Sanford, 17 Texas, 227; Arnold v. Jones, 26 Texas, 335; Ryan & Co. v. Railway, 65 Texas, 19; 3 Wood's Ry. Law, sec. 424; Railway v. Burke, 55 Texas, 323.

STAYTON, CHIEF JUSTICE.—A further consideration of this case induces us to believe that the former disposition made of it was erroneous, and the motion for rehearing is sustained.

Appellee brought this action to recover damages resulting from delay in transporting a car load of lemons, received by appellant from another railway company at Rosenburg Junction, to be transported to Fort Worth.

He alleged if the lemons had been transported within a reasonable time they would have reached Fort Worth on September 27, at which time they were then worth in the market $12 per box, but that they were not delivered at Fort Worth until October 2, when they were worth in the market only $4 per box, and that by reason of this delay he was damaged $2000, there being 250 boxes.

He further alleged that the lemons were shipped from New Orleans in a ventilated car, as was necessary for their preservation, but that while en route they were transferred from that to a close car, whereby they were caused to heat and rot, and that from this cause fifty boxes were lost, for which he asked $600 as damages.

He further alleged that he was compelled to assort the lemons after they were received at Fort Worth, which cost him 50 cents per box, and this he also sought to recover.

The petition then proceeds as follows: "Wherefore plaintiff avers and charges that by reason of said unreasonable delay in the transportation and delivery of said lemons as aforesaid, and the depreciation of the price thereof as aforesaid, and the transferring said lemons from said ventilated car to said close car as aforesaid, he has been damaged in the sum of $2725," for which he prays judgment.

Defendant answered by a general denial, and further specially pleaded as follows:

"And for further and special answer the defendant says that if it ever received the fruit described in plaintiff's petition, the same was received by it at Rosenburg Junction from the Galveston, Harrisburg & San Antonio Railway Company, and was immediately forwarded from said station in said car in which the same had been delivered to defendant, without opening the same; that the said car load of fruit was carried with speed and safety to the city of Temple, in Bell County, through which it

had to pass to be delivered to plaintiff at Fort Worth; that said car on its arrival at Temple was taken from the train and side tracked by a mob of persons who at the time were engaged in a riot in the said city of Temple, and in the removal and destruction of defendant's property, including its road bed, rolling stock, freight, etc., at said place; that said rioters were in great force and number, and that it was impossible for defendant with its agents and employes to resist them or dispossess them of defendant's property; that when the plaintiff's fruit arrived at Temple in the said car the said rioters immediately stopped the train and car bearing the said fruit and took possession thereof and out of the control of defendant, with overpowering force and arms, and against its protest, and notwithstanding its strenuous and exhausting efforts to prevent the same; that said rioters uncoupled the cars and forced said car of fruit upon a side track, where by overwhelming force and arms and violence, for the space of, to-wit, five days, they held possession of the same, refusing to permit the defendant to remove the same, and using force and violence to prevent defendant and its agents and employes from moving said car, as it then offered and wished and was ready to do.

"Defendant says that it had remaining in its employ at and during said time a sufficient number of competent employes, who would have moved its trains and carried said car of fruit and other freight, had it not been prevented by the force and violence herein charged. Defendant made every possible effort to resume control of its property and to move its said trains and ship the car bearing plaintiff's fruit, and through its manager and agents appealed to city, county, and State authorities and officers for assistance and force to control said riot and the prevailing unlawful force, and to assist defendant to repossess itself of its property and to pursue its lawful business. But defendant says that neither the city, county, nor State officers and authorities were able to furnish sufficient force to subdue said riot and dispossess said rioters and drive them from the occupation of defendant's property. That this state of affairs existed for the space of, to-wit, five days, during which the plaintiff's fruit was in the control and in the possession of said rioters, and could not be handled or transported by defendant. That immediately after the cessation of said riot and the dispersion of said rioters, which occurred at the end of, to-wit, five days, the defendant immediately recovered its property and freight, and took possession of said car, and as soon as it was possible transported the same to its destination, namely, the city of Fort Worth, in Tarrant County, where it delivered the same at once to plaintiff. Wherefore, defendant says that it has not been guilty of any negligence in and about said transportation of said car, and said delay was not due to the negligence of its duties by defendant, but solely and wholly and entirely to the act of the said rioters and unlawful persons, and to the inability of the peace officers of the city of Temple and county

of Bell and State of Texas to disperse the said rioters and restrain them. from acts of violence, and permit the defendant to pursue its ordinary and peaceful avocation. And all this the defendant is ready to verify, and prays judgment."

The plaintiff filed a general demurrer to this plea as setting up no lawful defense, which was sustained by the court.

There was a judgment for the plaintiff, from which this appeal is prosecuted. From the statement it will be seen that plaintiff based his claim for damages mainly on the ground that there was an unreasonable delay in the transportation of the lemons.

If a defense to a claim for damages resulting from such a cause, other than inevitable accident or the act of God, can prevail, there can be no doubt that the answer sets up such a defense; and if a good defense to any part of plaintiff's claim was set up in the answer, it was error to sustain a demurrer to it.

Under the statutes of this State the liability of the common carrier is that imposed by the rules of the common law: "He is liable not only for losses occasioned by secret theft or embezzlement, but for those inflicted by highway robbery, by the spoliation and outrages of mobs, rioters, and insurgents. The most resistless conflagration, if occasioned by human agency without any negligence whatever on the part of the carrier, will furnish no valid ground of exemption." Chevallier v. Straham, 2 Texas, 123.

For failure to carry and deliver, the carrier can not excuse himself by reason of the fact that through human agency not under his control this was prevented, without fault on his part; but if the property be wholly lost or partially decayed through some inherent quality, without fault on the part of the carrier, this will excuse the failure safely to carry and deliver, for the operation of the laws of nature working destruction or loss furnish the same excuse as do tempest, lightning, or other cause termed the act of God.

The reasons on which the common law rule is based are thus stated by two English judges, whose knowledge of the groundwork of that system has never been questioned:

In Forward v. Pittard, 1 Term Reports, 27, the reasons are thus stated by Lord Mansfield: "But to prevent litigation, collusion, and the necessity of going into circumstances impossible to be unraveled, the law presumes against the carrier, unless he shows that it was done by the king's enemies or by such act as could not happen by the intervention of man, as storms, lightning, and tempests. If an armed force come to rob the carrier of the goods, he is liable; and a reason is given in the books, which is a bad one, viz., that he ought to have a sufficient force to repel it; but that would be impossible in some cases, as for instance in the riots in the year 1780. The true reason is, for fear it may give room for collusion,

that the master may contrive to be robbed on purpose, and share the spoil."

· The reasons are thus stated by Best, Chief Justice, in Bailey v. Horne, 5 Bingham, 550: "When goods are delivered to a carrier they are usually no longer under the eye of the owner; he seldom follows or sends any servant with them to their place of destination. If they should be lost or injured by the grossest negligence of the carrier or his servants, or stolen by them, or by thieves in collusion with them, the owner would be unable to prove either of these causes of loss; his witnesses must be the carrier's servants, and they, knowing that they could not be contradicted, would excuse their masters and themselves. To give due security to the property the law has added to that responsibility of a carrier which immediately rises out of his contract to carry for a reward—namely, that of taking all reasonable care of it—the responsibility of an insurer. From his liability as an insurer the carrier is only to be relieved by two things, both so well known to all the country when they happen that no person would be so rash as to attempt to prove that they had happened when they had not, namely, the act of God and the king's enemies."

The same reasons do not apply when the thing is actually transported and delivered, although when delivered it may be greatly diminished in value by a fall in the market price, or its value partially or entirely destroyed by reason of its inherent perishable nature which has worked its partial or entire destruction while in transit.

The rule is thus stated by a recent text writer, in accordance with the views expressed by many others:

"But the reasons upon which the extraordinary responsibility of the common carrier for the safety of the goods is founded do not require that the same responsibility should be extended to the time occupied in their transportation. The danger of loss by robbery or embezzlement or theft by collusion and fraud on his part, has no application when the mere time of the carriage is concerned. 'His first duty,' it is said, 'is to carry the goods safely, and the second to deliver them; and it would be very hard to oblige the carrier, in case of any obstruction, to risk the safety of the goods in order to prevent delay. His duty is to deliver the goods within a reasonable time, which is a term implied by the law in the contract to deliver, as Tindal, C. J., puts it when he says, "the duty to deliver within a reasonable time being merely a term engrafted by legal implication upon the promise or duty to deliver generally." In this respect, therefore, the common carrier stands upon the same ground with other bailees, and may excuse delay in delivery of the goods by accident or misfortune, although not inevitable or produced by the act of God. All that can be required of him in such an emergency is that he shall exercise due care and diligence to guard against the delay, and that if it occur without his fault or negligence, he shall omit no reasonable efforts to secure the safety of the goods.'" Hutch. on Carr., sec. 330. See also secs. 331–35, 292.

Many cases are cited in the notes illustrative of the application of this rule, and we will briefly refer to some more recent.

In Hass v. Railroad Company, 35 American and English Railway Cases, 572, it was held that the company was not liable for loss resulting from delay in delivering freight caused by a strike of its employes, accompanied by intimidation and violence which could not be prevented or suppressed by the company or civil authorities. The loss in that case resulted from a fall in the market price between the time the freight would ordinarily have been delivered but for the obstruction and the time when it was delivered.

In the case of Grismer v. Railway Company, 102 New York, 563, the same ruling was made, and the case distinguished from Weed v. Railway Company, 17 New York, 362, and Blackstock v. Railroad Company, 20 New York, 48. Case last cited, while affirming the rule quoted from Hutchinson on Carriers, held that the simple fact that employes refused to work did not relieve the carrier from liability for failure to transport freight within the usual time.

Railroad Company v. Hallowell, 65 Indiana, 189, was a case in which the carrier was sought to be held liable for failure to receive and transport freight within the usual time, and the company set up a defense similar to that urged in the case before us. After stating the rule as to the liability of carrier for failure to deliver at place of destination, the court said: "But this strict rule contended for by the appellee is applicable to common carriers only after they have received the goods for transportation and fail to deliver them at their destination, or when they are lost. In cases like the present, for delay in receiving and carrying the goods, the carrier is not an insurer, and is bound only by the general rule of liability for a breach of his contract or of his public duty as a carrier, and may be excused for delay in receiving the goods, or in transporting them after they have been received, whenever the delay is necessarily caused by unforeseen disaster which human prudence can not provide against, or by accident not caused by the negligence of the carrier, or by thieves or robbers, or an uncontrollable mob."

In Railway Company v. Halger, 84 Illinois, 36, it was held competent for the carrier to show, in a suit for damages resulting from delay in the transit of freight, that the delay was caused solely by irresistible violence of men who were not in the employment of the company, and that when employes suddenly refused to work and were discharged and others employed, who were prevented by lawless violence of those discharged from doing duty, the company was not liable for delay thus caused.

The case of Railway Company v. Bennett, 6 American and English Railway Cases, 402, decided by the Supreme Court of Indiana, approves the rule asserted in Railway Company v. Hallowell, though the case was one under contract.

Many cases might be cited in which carriers have been held not liable for injury resulting solely from delay, when this was shown to have been caused by misfortune or accident, not such as would relieve the carrier for loss of freight or failure to deliver it.

We are of opinion that the answer excluded presented a good defense to so much of the action as sought to recover damages for decline in market price of lemons during time of transit.

It may be true that the answer does not present a defense arising from the fact that the lemons may have become less valuable while in transit by reason of natural decay without fault on part of carrier; for there is no averment in the pleadings of either party that there was any diminution in value on that account.

Plaintiff does allege that they heated, and on that account rotted to a given extent, but that was attributed to the wrongful act of defendant in putting them in an improper car. To the extent the fruit may have deteriorated on account of its perishing nature while in transit, the facts pleaded would furnish a defense if defendant bestowed upon it proper care; for in such case such a loss would be attributed solely to the decay, which the answer excuses.

For the error of the court in sustaining the demurrer, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered February 14, 1890.