E. A. STERLING v. ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

Decided March 15, 1905.

**1.—Carrier of Live Stock—Delay—Strikes and Mobs.**

Instructions held to correctly present the issues in an action for damages to live stock by delay in transportation, sought to be excused by defendant because occasioned by interference with the operation of its trains by strikers and mobs.

**2.—Same—Burden of Proof.**

The burden was on plaintiff to prove that the delay in the transportation of his cattle to market by the carrier was negligent.

### 3.—Carrier—Delay—Strike—Asking Protection—Charge.

The carrier is held only to reasonable diligence in attempting to forward the transportation of property delayed by mobs of strikers, and it was proper, having so charged, to refuse a requested instruction that it was required to call on the civil and military authorities to quell the mob.

### 4.—Carrier—Receipt of Goods During Strike.

A charge holding a railway liable for failing to refuse cattle tendered it for transportation because of a strike impeding the operation of its line, held properly refused, because unwarranted by the state of the evidence, and not the proximate cause of the damages by delay in transportation.

### 5.—Argument of Counsel.

The expression "gentle cutthroats," used by counsel for a railway in reference to witnesses for plaintiff, who had been engaged in a strike, held, not to be taken literally, nor cause for reversal.

### 6.—Evidence—Personal Knowledge.

The evidence of a witness was properly excluded where based not on personal recollection, but on the contents of books kept at stockyards.

### 7.—Contents of Books—Certificates.

Certificates of facts shown by stockyards books are not admissible in place of evidence of the contents of the books.

### 8.—Evidence—Notice—Negligence.

The fact that the superintendent of terminals at St. Louis notified the railway transporting cattle to market not to attempt delivery to the stockyards on account of the strike, preventing the operation of such terminals, was admissible in evidence on the issue of the carrier's negligence in failing to forward the cattle to that point.

### 9.—Practice on Appeal—Demurrer.

It must appear from the record that a special exception of defendant was acted on and sustained in order for error in sustaining it to be considered on appeal.

Appeal from the District Court of Williamson County. Tried below before Hon. V. L. Brooks.

*Geo. W. Graves* and *Thos. P. Davidson,* for appellant.—Where the plaintiff has established a prima facie case, and the defendant pleads in avoidance affirmative matter in the nature of a special defense, it is the duty of the court to so charge the jury that they will not be in doubt upon whom the burden of proof as to such special defense falls. St. Louis, I. M. & S. Ry. Co. v. Pumphrey, 42 S. W. Rep., 246; St. Louis, I. M. & S. Ry. Co. v. Parmer, 30 S. W. Rep., 1109; Missouri P. Ry. Co. v. Scott, 4 Texas Civ. App., 76; Texas & P. Ry. Co. v. Morse, 1 App. C. C. (White & W.), 411; St. Louis S. W. Ry. Co. v. Martin, 35 S. W. Rep., 28; Central T. & N. W. Ry. Co. v. Bush, 12 Texas Civ. App., 293, 34 S. W. Rep., 133; Ryan v. Railway Co., 65 Texas, 13; Odom v. Woodward, 74 Texas, 41, 11 S. W. Rep., 925; 5 Am. & Eng. Ency. Law (2d ed.), 353, par. 19; 21 Id., 515, 315, foot notes 315, and cited authorities.

As to kind of strike sufficient to relieve from liability for delay: Gulf, C. & S. F. Ry. Co. v. Levi, 76 Texas, 338; 13 S. W. Rep., 191, and authorities therein cited; Gulf, C. & S. F. Ry. Co. v. McCorquodale, 71 Texas, 47, 9 S. W. Rep., 80.

It is the duty of the carrier, before taking goods into its possession for the purpose of carriage, to notify the shipper of the known pendency and existence on its own and connecting lines of extraordinary conditions, such as a widespread and general strike, which makes it certain— or at least very probable—that the carrier can not deliver the goods within a reasonable time, and that unusual delay, risk and loss will probably result.    As to carrier's duty to notify shipper: Inman v. St. Louis S. W. Ry. Co., 14 Texas Civ. App., 54, 37 S. W. Rep., 37; Pruitt v. Hannibal & St. J. Ry., 62 Mo., 539; Guinn v. Wabash S. L. & P. Ry. Co., 20 Mo. App., 453.    As to effect of receipt: 5 Am. & Eng. Ency. of Law (2d ed.), title "Carriers of Goods," 162, 165, and cited authorities; also same, vol. 5, p. 169, foot notes 3 and 5, and cited authorities; Hutchinson on Carriers (2d ed.), secs. 186-198 inclusive, and secs. 117, 208, 280 and 115.    As to right to refuse shipment: Fort Worth, etc., Ry. Co. v. Masterson, 95 Texas, 262, 66 S. W. Rep., 833; Houston & T. C. Ry. Co. v. Smith, 63 Texas, 322; St. Louis S. W. Ry. Co. v. Smith, 20 Texas Civ. App., 461, 49 S. W. Rep., 627.    As to right to special charge: Neville v. Mitchell, 66 S. W. Rep., 579, and cited authorities; Chicago, R. I. & P. Ry. Co. v. Cain, 37 Texas Civ. App., —, 12 Texas Ct. Rep., 4; Texas & P. Ry. Co. v. Smissen, 73 S. W. Rep., 42; International & G. N. Ry. Co. v. Anderson, 3 Texas Civ. App., 11, 21 S. W. Rep., 691.

Where counsel uses invective and damaging statements to the credit of witnesses whose testimony must be broken down to secure a verdict, a new trial should be granted.    Moss v. Sanger, 75 Texas, 321, 12 S. W. Rep., 619; Beville v. Jones, 74 Texas, 148, 11 S. W. Rep., 1128; Wichita Valley M. & E. Co. v. Hobbs, 5 Texas Civ. App., 35, 23 S. W. Rep., 923.

The court erred in excluding the testimony of witness Hunninger, that there were seventeen different consignments of one or more cars of cattle each delivered at the said National Stockyards on July 3, 1894, and in refusing to admit in evidence the unloading certificates covering all the said consignments and properly identified by the said witness. Also in refusing to admit in evidence copies of the records of said National Stockyards Company covering the receipts of cattle thereat from St. Louis on the said days of July 2 and 3, 1894.    Gulf, C. & S. F. Ry. Co. v. Dimmitt, 42 S. W. Rep., 583, 17 Texas Civ. App., 255; International & G. N. Ry. Co. v. Diamond Roller Mills, 36 Texas Civ. App., 590, 82 S. W. Rep., 660; Burton v. Driggs, 20 Wall., 125; notes to 28 Am. St. Rep., p. 24; B. W. Jones on Ev., chap. 7, title "Best Evidence," par. 217, and note 1, and cited authorities.

In a suit by a shipper against a carrier for damages resulting from its negligent delay in the shipment, copies of written notices and telegrams received at a distant office of the carrier from its connecting carriers, as to conditions then existing on their lines, with which notices and telegrams the shipper was not in any way connected, and of which he had no notice at the time of their receipt, are inadmissible as against such shipper.    Baker v. Ashe, 80 Texas, 361, 16 S. W. Rep., 36; Am. & Eng. Ency. Law (2d ed.), vol. 9, title "Documentary Evidence," p. 937, subd. 3.

Where the movement of its trains is interrupted by the existence of a strike among its employes, on its own and connecting lines, it is the

duty of the carrier not only to use all the force and means then and there reasonably available to it to overcome such resistance, but also to promptly and properly call upon the civil and military authorities for additional assistance. Gulf, C. & S. F. Ry. Co. v. Levi, 76 Texas, 338, 13 S. W. Rep., 191; International & G. N. Ry. Co. v. Hynes, 3 Texas Civ. App., 21, 21 S. W. Rep., 622; also cited authorities under both cases.

*S. R. Fisher* and *J. H. Tallichet,* for appellee.—A suit for damages to a shipment of livestock to recover for injuries alleged to have been caused by delay in performing the contract of carriage does not stand upon the same footing with cases involving the loss or destruction of the goods shipped. In delay cases the plaintiff must prove that the delay was unreasonable and negligent. This being the case, the court certainly did not err in merely charging the jury to the effect that the burden of proof was upon the defendant to establish his case by a preponderance of the evidence. International & G. N. R. R. Co. v. Hynes, 3 Texas Civ. App., 21, 21 S. W. Rep., 622; Gulf, C. & S. F. Ry. Co. v. Levi, 76 Texas, 338; 6 Cyc. Law and Procedure, 442, 517, 524; Chittim v. Martinez, 60 S. W. Rep., 258; Collins v. Clark, 72 S. W. Rep., 97.

The court did not err in refusing to give plaintiff's special instruction, because the same is an incorrect statement of the law and is on the weight of the evidence. Said charge, if given, would have erroneously and improperly required the defendant to concentrate all its efforts upon plaintiff's cattle, to the exclusion of all other property in its charge, and to call upon the civil and military authorities, without regard to whether both or either were available, or could or would have taken steps to protect defendant, or to facilitate the forwarding of plaintiff's cattle. Ratcliff v. Beard, 14 Texas, 47; De Forest v. Miller, 42 Texas, 36; Lanyon v. Edwards, 26 S. W. Rep., 525; Gulf, C. & S. F. Ry. Co. v. Mangham, 29 Texas Civ. App., 486, 69 S. W. Rep., 80.

The language of junior counsel for defendant, in his address to the jury, in referring to plaintiff's witnesses Sibeck, Keefe and Cogswell as "gentle cut-throats," was not calculated to inflame the minds of the jury or to prejudice them against said witnesses. It can scarcely be classed as invective, and certainly contains no statement of fact not in evidence, nor can any sane man say that it probably had any effect in securing the verdict. Further, the overwhelming preponderance of the evidence supports the verdict rendered. Telegraph Co. v. Sieders, 29 S. W. Rep., 258; Railway Co. v. Brown, 40 S. W. Rep., 608; Oil Co. v. Wallace, 54 S. W. Rep., 638.

There was no pretense that the witness Hunninger knew or had ever known what, if any, shipments of stock were received at the National Stockyards July 2 and 3, 1894, and said testimony was therefore hearsay, and inadmissible. Said "unloading certificates" were mere hearsay, and were properly excluded. International & G. N. R. R. Co. v. Diamond Roller Mills, 82 S. W. Rep., 660.

The court did not err in the first and fourth paragraphs of its charge on the law of the case, because each of said paragraphs is a correct and accurate presentation of the law applicable to this case. Gulf, C. & S. F. Ry. Co. v. Levy, 76 Texas, 338,

FISHER, CHIEF JUSTICE.—The very full and accurate charge of the trial court substantially states the nature of the case, and the issues of fact and law involved. Therefore, we set out the charge in full:

"In this case, the plaintiff, E. A. Sterling, sues the defendant, the St. Louis, Iron Mountain & Southern Railway Company, to recover of it damages claimed to have resulted to him through the alleged negligent delay of the defendant in transporting certain of his cattle, and through the alleged negligent conduct of defendant in caring for said cattle while en route.

"The plaintiff alleges, in substance, that he was, on the 29th day of June, A. D. 1894, the owner of sixty-three fat cows and sixty-seven fat calves. That on said date he caused said cattle to be delivered to the defendant, at Texarkana, Arkansas, for the purpose of having same transported by it as a common carrier of livestock, with all reasonable diligence to their destination at East St. Louis, in the State of Illinois; and that a reasonable time in which to have delivered said cows and calves at their destination by defendant was on or before July 2, 1894.

"That said cattle arrived by defendant's railway at Baring Cross, Arkansas, at about eleven o'clock p. m. on Saturday, June 30, 1894, but that thereafter the defendant did not carry and convey said cattle with reasonable diligence, or deliver them within a reasonable time at their destination. But that, on the contrary, defendant, through its employes, officers and agents, so carelessly and negligently conducted its business in regard to the transportation of said cattle that same were delayed a long and unreasonable time, to wit, about ten days, and were, during said time, left in pens, provided by defendant, for holding cattle, which were uncovered, and were not provided with suitable water, on account of which plaintiff alleges the said cows and calves could not eat the food given them, or rest to any advantage, and would not drink the said water, and that in consequence of said alleged delay and failure by defendant to provide suitable pens and water the said cows and calves greatly shrunk in flesh, and became sick and feverish, and, when delivered at their destination, on to wit, July 11, 1894—but too late for that day's market—the sixty-three calves could not be sold on the said market because of their damaged and unmerchantable condition for any price, though offered for sale on said market. That plaintiff's consignees thereafter shipped said calves on to the city of Chicago, in the State of Illinois, where they were sold on July 14, 1894, for $243, which was their fair market value on said Chicago market, and that they were worth no more, if as much, on said St. Louis market at the time they were delivered there as aforesaid.

"Plaintiff also alleges that said cows were held by his consignees at East St. Louis for several days in the hope of selling same, but that a bid could not be obtained upon them, whereupon said consignees shipped the said cows to Chicago, where same arrived, and were sold on July 11, 1894, for the sum of $477.62, which was their fair market value on the said Chicago market, and that they were worth no more, if as much, on the said St. Louis market at the time they were delivered there as aforesaid.

"That the fair market value of said calves on the said East St. Louis

market on the said July 2, 1894, and on the day following that, had they been carried with reasonable diligence and care, would have been $625, which is $282 more than their fair market value on the day they were delivered on the said market, and that much more than their fair market value on the said Chicago market.

"Plaintiff further alleges that the fair market value of the said cows in the East St. Louis market on the said July 2, and on the day following that, had they been carried with reasonable diligence and care, would have been $1,500, which is $1,020 more than their fair market value on the day they were delivered on the said market, and that much more than their fair market value on the said Chicago market.

"The defendant, answering the allegations of plaintiff's petition, denies same all and singular, and, in addition, pleads that, if said allegations or any of them are true, it received plaintiff's cattle at Texarkana, and forthwith transported same with all due diligence and care over its line of railroad until they reached Baring Cross station, where they were unavoidably, and without fault on defendant's part, delayed by a strike and mob, until about July 10, 1894; that, while so delayed, said cattle were placed in defendant's stock pens, which were in good condition, and that said cattle were properly cared for in said pens, being furnished with an abundance of wholesome food and water, and given all necessary and proper attention. For full particulars of defendant's allegations you are referred to its third amended original answer and to its first supplemental answer.

"As the law of the case, you are charged as follows, viz.:

"1.—There is no rule of law which requires a carrier of livestock to deliver same within any particular time after their receipt for transportation. All that the law implies from the mere receipt of livestock for transportation is that the carrier undertakes to transport and deliver same within a reasonable time. What is such a reasonable time is not susceptible of a precise definition, further than to say that it is such a time as a man of reasonable diligence and prudence would require for the transportation of his own livestock under the same or similar circumstances.

"2.—A common carrier of livestock is not only bound to transport and deliver same to the consignee within a reasonable time, but also to exercise reasonable care for the safety and preservation of such stock while en route to its destination. Reasonable care in such cases is that degree of care which a reasonably prudent and careful man would exercise under the same or similar circumstances in attending to his own stock while being transported.

"3.—The two main questions, therefore, to be determined by the jury in this case are, Was there unreasonable delay on the part of the defendant in transporting and delivering plaintiff's cattle to his consignees at East St. Louis? and, Did the defendant exercise reasonable care of said cattle while they were en route to their said destination and confined in its said pens? If you decide both or either of these questions in favor of plaintiff, it will then become necessary for you to further determine the amount of plaintiff's damages, if any.

"4.—If you believe, from a preponderance of the evidence, that plain-

tiff caused his said cattle to be delivered to defendant for transportation from Texarkana to East St. Louis, and that defendant so undertook to transport said cattle, as alleged by plaintiff, and that defendant failed to transport and deliver said cattle within a reasonable time, as that term has been hereinbefore defined, and that such failure resulted in damage to said cattle, you will find for plaintiff, and fix the amount of his damages for such failure, in accordance with the instructions hereinafter given you. In this connection, however, you are further charged that all that can be lawfully required of a railway company, or other common carrier of livestock, in respect to the time of transporting and delivering them, is that it shall exercise reasonable care to forward and deliver same promptly. There is no absolute duty resting upon a common carrier of livestock to transport and deliver same within what is, under ordinary circumstances, a reasonable time, when the action of men acting unlawfully, such as mobs, delays the running of its trains, through no fault on its part. The only duty resting on the carrier, under such circumstances, if not otherwise at fault, is to use reasonable care and diligence to overcome the obstacles interposed, and to forward such stock as promptly as reasonable diligence and care permit and require. If, therefore, you believe from the evidence that there was unusual delay on the part of the defendants in transporting and delivering plaintiff's cattle, but that such delay was caused by the unlawful mob violence of strikers, as pleaded by defendant, and that defendant exercised reasonable diligence and care to overcome the obstacles interposed by such unlawful mob violence, and that said delay was not caused by the doing or the omission to do, on the part of defendant, anything which a reasonably prudent man would have done or would not have omitted to do, as the case may be, under the same or similar circumstances, to facilitate the transportation and delivery of his own cattle, you will find in defendant's favor on this issue.

"5.—If you find in plaintiff's favor on the issue above submitted to you, you will fix his damages at such sum as will represent the difference between the market price, or value at East St. Louis, of said cattle when same did arrive there, and what would have been their said market price or value at said point when they should and would have arrived there, if defendant had exercised reasonable care to transport and deliver same promptly, together with interest on said sum at the rate of six percent per annum from the date when said cattle should have arrived at said point. In this connection you [are] further instructed that, if said cattle had no market value when they did arrive in East St. Louis, and if plaintiff, by sending same to Chicago, and there selling them, realized as much or more that he could have realized from selling them at East St. Louis when they arrived there, you may consider the price realized at Chicago for said cattle as being their market price or value at East St. Louis at the date when they arrived at East St. Louis.

"6.—If you do not believe, from a preponderance of the evidence, that defendant failed to exercise reasonable care and diligence to promptly transport and deliver said plaintiff's cattle to consignees, having in view all the circumstances and conditions shown by the evidence to have existed at and during the time of said shipment, or if you do not believe, from a preponderance of the evidence, that the extraordinary delay on

defendant's part in delivering plaintiff's said cattle to his consignees, if any such extraordinary delay occurred, caused the damage to said cattle of which plaintiff complains in this suit, you will return a verdict for the defendant, unless you find in plaintiff's favor on the issue hereinafter submitted to you.

"7.—If you find in the defendant's favor on the issues submitted to you in the preceding paragraph of this charge, or either of them, but also find, from a preponderance of the evidence, that the defendant, in its manner of keeping and attending to plaintiff's cattle while in its stockyards at Baring Cross, or in placing said cattle in said stockyards at all, failed to exercise all of the care which a reasonably prudent man would exercise in the care of his own stock, under the same or similar circumstances, in any of the particulars alleged in plaintiff's petition, and that the damage to said cattle, if any, of which plaintiff complains in this suit, was caused by such failure, you will return a verdict for plaintiff and fix his damages as hereinbefore directed in paragraph 5 of this charge.

"8.—If you do not find, from a preponderance of the evidence, that defendant failed to exercise reasonable care, as that term is hereinbefore defined, to either promptly transport and deliver plaintiff's cattle to his consignees, or to keep and attend to same while confined in said stockyards at Baring Cross, or in placing said cattle in said stockyards at all, as alleged by plaintiff, you will return a verdict for the defendant.

"9.—If you do not find that defendant was legally responsible, under the instructions hereinbefore given you, for the extraordinary delay, if any, in transporting and delivering plaintiff's cattle to his consignees, and if you do find that the damage to said cattle, of which plaintiff complains in this suit, if any, was caused in part by said delay and in part by defendant's failure, if any, to exercise reasonable care in placing said cattle in said stockyards at Baring Cross, or in attending to and keeping said cattle while confined in its stockyards, you will return a verdict for defendant, because the evidence in the case does not furnish a basis for determining the respective amounts of such damages.

"10.—The burden of proof is upon the plaintiff to establish facts entitling him to recover under this charge by a preponderance of the evidence, and, unless you find that he has done so, you will return a verdict for the defendant.

"11.—The jury are the exclusive judges of the credibility of the witnesses, of the facts proven, and of the weight to be given to the testimony, but you are bound to take the law of this case as it is given you in this charge, and to be governed thereby in arriving at your verdict."

Verdict and judgment resulted in favor of defendant. We find that there was a delay in the shipment, substantially as pleaded by the plaintiff, but that such delay was excusable, in view of the facts pleaded and proven by the appellee; and that the defensive matter thus interposed against the claim of the appellant is amply supported and established by the evidence in the record.

Appellant's first assignment of error complains of the error of the court in its charge on the burden of proof, as stated in the tenth paragraph. The court correctly stated what we understand to be the law upon this subject.

The court correctly refused to give the charge set out under the appellant's second assignment of error. It is practically to the effect that the appellee would be required to use all available means, and, by calling upon the civil and military authorities, to have controlled the train carrying plaintiff's cattle, and to quell the strike and control the influence of the mob at Baring Cross, in order to expedite the shipment of the plaintiff's cattle. The court's charge upon this subject, in our opinion, was correct; and the burden required by the special charge was more onerous than was exacted by the law. Reasonable diligence, under the circumstances, is what the law requires. (5 Am. & Eng. Ency. Law (2d ed.), 257, and cases there cited.)

The issue presented by the requested and refused charges set out under the appellant's third and fourth assignments of error was not, as we construe the pleadings, an issue in the case. Furthermore, the charge set out under the fourth assignment is practically subject to the same objection as is the charge set out under the second assignment of error. Furthermore, under the law, the appellee, as a connecting carrier, was required to receive the shipment of cattle when tendered it, unless there was some substantial and valid reason existing at the time that would justify it in declining to receive the cattle for shipment. The facts in the record bearing upon this subject are not, in our opinion, sufficient to show that when the cattle reached Texarkana, and were tendered to the appellee, it would have been justified in declining to receive them. Furthermore, the mere reception of the cattle at Texarkana could not, in any view that we take of the testimony, be considered as the proximate cause of the loss sustained by the plaintiff.

We are of the opinion that the fifth assignment of error is not well taken. The jury evidently, in view of the testimony, did not take the statement of the counsel, in the use of the expression "gentle cut-throats,"—referring to certain witnesses—as literally true. The evidence justifies the conclusion that some of these witnesses referred to were participants in the strike, and that they were parties to violent and unjustifiable assaults made upon persons whom the railway company was employing, and whose services it attempted to use in order to quell the strike and to operate its road. They were witnesses offered by the appellant, and the evidence in the record justifies the conclusion that, while they were not literally cut-throats, as stated by counsel for appellee in his argument, they were doubtless willing to become so, if thereby they could accomplish the purpose intended by the strike.

The court did not err in excluding the evidence of the witness Hunninger, as set out under the appellant's sixth and seventh assignments of error. The bill of exceptions shows that the witness was testifying, not from personal recollection of what actually happened, but proposed to base his evidence upon what was the contents of certain books kept by the stockyards at East St. Louis.

If the contents of these books was admissible, which is a question we deem it unnecessary to decide, the plaintiff did not seek properly to avail himself of such evidence. It is true, the books were beyond the jurisdiction of the trial court, as they were located in the State of Illinois; but, as the witness had no personal recollection of the facts sought to be proven, and only based his evidence upon what appeared upon the face

of the books, the appellant should have introduced a copy of so much of the contents of the books, or the books themselves, as was relevant to the facts sought to be established. This was not done. In this connection he sought to introduce certificates of certain facts tending to show that cattle were received at East St. Louis during the time that he claims his cattle should have been delivered; but these certificates do not appear to be the contents of the books or records kept in the National Stockyards, but the certificates of some person. These certificates do not appear to be authorized; or, if such was the case, it is doubtful whether they would be admissible in evidence. They are mere ex parte statements of the party who made them.

We are of the opinion that the evidence complained of in appellant's eighth assignment of error was admissible. The notification from the superintendent of the terminals that extended between St. Louis, Missouri and East St. Louis, Illinois, to the railway company, to the effect that such terminals would not receive property for transportation, was admissible. One of the principal questions in the case was whether or not the appellee was guilty of negligence in detaining the cattle at Baring Cross, and not carrying them to St. Louis, Missouri, the end of its line, to be there delivered to those terminals that connected with this road, for the purpose of being transferred from St. Louis to East St. Louis. The manager of the terminals, upon which strike was then pending, notified the appellee, as before stated, in effect, not to undertake to deliver to the terminals, by reason of the strike, any property for shipment to East St. Louis. The facts show that such strike was pending, and the instruction received from the superintendent of the terminals was proper to be considered by the jury on the issue as to whether or not the appellee was guilty of negligence, or was in the exercise of ordinary care in detaining the cattle at Baring Cross. It was proper to go to the jury as evidence tending to account for its conduct at that place.

Appellant's ninth assignment of error can be disposed of with the statement that, from the judgment of the court, it does not appear that defendant's special exception was acted upon by the trial court, and sustained, as claimed by the appellant.

The charges complained of in appellant's tenth and eleventh assignments of error were properly given by the trial court. They correctly stated the rule of law, as we understand it. We find no error in the record, and the judgment is affirmed.

*Affirmed.*

Writ of error refused.