PANHANDLE & S. F. RY. CO. et al. v.
THOMPSON. (No. 1861.)

(Court of Civil Appeals of Texas. Amarillo.
Nov. 23, 1921. Rehearing Denied
Jan. 4, 1922.)

1. **Carriers** ⟶213—Carrier liable for delay
due to strike, if it does not use reasonable
diligence to supply places of striking em-
ployees.

Where the employees suddenly abandon a
carrier's service, and, while offering no violence
and causing no forcible obstruction to its busi-
ness, simply refuse to work or further discharge
their duties, for any delay in a shipment of cat-
tle consequent thereon the carrier is liable,
if it fails to use reasonable diligence in supply-
ing the places of the striking employees.

2. **Carriers** ⟶230(3)—Whether reasonable
diligence was used in supplying substitutes
for strikers held for jury.

In action for damages occasioned by delay
in shipment of cattle, whether defendant car-
rier exercised ordinary care and diligence to
supply substitutes for striking employees *held*
for the jury.

3. **Carriers** ⟶229(2)—Treatment of stock aft-
er negligent unloading and delay immaterial
as to application of general rule as to dam-
ages for delay.

Where carrier was negligent in unloading
and delaying a shipment of cattle at a certain
point until its freight traffic, interrupted by a
strike, could be resumed to their destination,
treatment of the cattle at such point becomes
immaterial, and the general rule as to the
measure of damages for the delay applies.

4. **Appeal and error** ⟶1060(4)—Improper ar-
gument held not prejudicial.

Carrier in action for negligent delay in ship-
ment of cattle cannot complain of improper ar-
gument on the part of plaintiff's counsel, where
the jury was instructed not to consider it, and
its verdict was in the exact amount which the
evidence shows to have been the damages sus-
tained.

On Motion for Rehearing.

5. **Judgment** ⟶256(2)—Judgment awarding
damages for negligent delay in shipment of
cattle held supported.

A finding of the jury that carrier did not
transport cattle within reasonable time sup-
ported judgment for shipper on the issue as to
whether carrier had used reasonable diligence
in supplying the places of striking employees,
which issue was not submitted.

Appeal from District Court, Hale County;
R. C. Joiner, Judge.

Action by Tom Thompson against the Pan-
handle & Santa Fé Railway Company and
J. L. Lancaster and another, receivers for
the Texas & Pacific Railway Company. Judg-
ment for plaintiff, and the receivers appeal.
Affirmed.

R. S. Shapard, of Dallas, and Terry Cavin
& Mills, of Galveston, Madden, Trulove, Ry-
burn & Pipkin, of Amarillo, and E. Graham,
of Plainview, for appellants.

Williams & Martin, of Plainview, for ap-
pellee.

HALL, J. This was a suit by appellee
Thompson against Panhandle & Santa Fé
Railway Company and J. L. Lancaster and
Charles L. Wallace, receivers for the Texas
& Pacific Railway Company, as defendants,
for alleged damages to a shipment of 145
cattle shipped by appellee from Plainview,
Tex., to Fort Worth, Tex., April 9, 1920.
Appellee alleged negligent delay in the ship-
ment, failure to properly care for and feed
the cattle in transit, and sought to recover
for extra feed bills, stating total damage to
be $1,643. Upon a trial before a jury there
was a verdict and a judgment in favor of
the Panhandle & Santa Fé Railway Company
and against the receivers of the Texas &
Pacific Railway Company in the sum of $1,-
408.90. The substance of the original peti-
tion is that on April 9, 1920, plaintiff deliver-
ed the cattle to the Panhandle & Santa Fé
Railway Company at Plainview, to be trans-
ported via Sweetwater and the Texas & Pa-
cific Railway Company to Fort Worth; that
the shipment should have arrived at Fort
Worth in time to have been rested, fed, wa-
tered, and sold on the market of April 10,
1920, but that they were not properly trans-
ported and were not delivered at Fort Worth
until April 16th, and could not be sold until
the following day; that the cattle were not
properly fed and watered during the delay
and shrank greatly in weight and became
unmerchantable in appearance; that as a
result of defendant's negligence 144 of the
cattle lost 50 pounds each in weight, that one
cow in the shipment lost 100 pounds in
weight, more than they would have lost if
properly transported, and by reason of their
unmarketable appearance they were worth
one cent per pound less than they would
have been if properly transported and de-
livered; that the extra feed bill amounted
to $143.

The defendant Panhandle & Santa Fé
Railway Company answered by general de-
murrer, general denial, and by special pleas,
limiting its liability to damages, if any, oc-
curring on its own line. It further sets up
that there was a strike of the switchmen
employed by the defendant's receivers at Fort
Worth; that the strike occurred after de-
fendants had received the cattle at Plain-
view and prevailed for two weeks during
which time all of the freight traffic over said
lines of railway was paralyzed; that the al-
leged delay was attributable wholly to said
strike, over which the defendants had no con-

trol; and that the responsibility of the Panhandle & Santa Fé ended when it had delivered the shipment to its connecting carrier, the Texas & Pacific Railway Company, at Sweetwater. The receivers answered by general demurrer, general denial, and specially that while the shipment was in their hands they exercised ordinary care to transport and deliver the same at Fort Worth; that before it reached their line of railway at Sweetwater the switchmen theretofore employed by them left their employment, went on a strike, and refused to handle shipments coming into terminals at Fort Worth for said defendants for about two weeks, thus practically tying up the movement of freight during that period; that such switchmen refused to work or permit others to work for defendants during such time; that defendants exercised ordinary care to overcome said obstacles, and had such of its officers, superintendents, and other employees who could perform the work of switchmen to do such work as could be done in the terminals at Fort Worth; that by reason of such condition defendants could not and did not operate any trains out of Fort Worth except passenger trains; that in the exercise of ordinary care the defendants transported the shipment to Baird, Tex., where the cattle were unloaded and taken care of until freight traffic could be resumed into Fort Worth; that during such delay they took care of the cattle at Baird, feeding, watering, and resting the same, and that the amount charged for such feed was in all things proper and reasonable.

[1] The first assignment is based upon the court's refusal to peremptorily instruct the jury to find for defendants, because it is insisted that the evidence relating to the issue of the strike showed a perfect defense. It appears from the statement of facts that there was a strike of switchmen in Fort Worth, which included all such laborers except three, who, it seems, continued to work for the Texas & Pacific Railway Company at that point, and that the strike continued until the night of April 15th about midnight. The witness Kebort, defendant's assistant yardmaster, said that in an effort to get the switchmen to go back to work they called on all the regular men and asked them to work, and had an extra board of about 35 men, and they were called on to work and refused; that the assistant general manager from Dallas made a plea to them to work, and that witness talked to many of them in person; that in addition to this the local chairman of the Brotherhood of Railway Trainmen made every effort to fill the places of these men that were in road service, and they would not work; that the men in road service are the men that pull the trains after they get out on the road out of the terminals, and the roadmen and switchmen are two different

classes of men in so far as their duties are concerned; that this was true in April, 1920; that such switching as was done besides the crew of three men above mentioned was done by one engine manned entirely by the officers of the operating department of the Texas & Pacific Railway Company at Fort Worth, making up the passenger trains and keeping the mail trains running. It was not shown that the striking switchmen used any threats of violence to prevent others from being employed by filling their places. The rule seems to be that where the employees of a company suddenly abandon its service, and, while offering no violence and causing no forcible obstruction to its business, simply refuse to work or to further discharge their duties, for any delay consequent thereon, as, for instance, where there is a failure to supply promptly their places, the carrier is liable. 4 R. C. L. p. 744, § 212; M., K. & T. Ry. Co. v. Woods, 117 S. W. 196; 10 C. J. 293, § 415.

[2, 3] It was not shown that any effort was made by the receivers to secure switchmen other than from their regular crews and the extra 35 men in Fort Worth, with which to supply the places of the strikers, nor was it shown that the strikers resorted to violence, threats, or other means to prevent them from securing substitutes. It appears that the Texas & Pacific Railway Company had its own stock pens near its Union Depot in Fort Worth and from which the cattle could have been driven to the union stockyards and delivered to the consignees. Under these facts the jury was warranted in finding that the receivers did not exercise ordinary care and diligence in making the delivery and avoiding the delay. Sterling v. St. L., I. M. & S. Ry. Co. 38 Tex. Civ. App. 451, 86 S. W. 655; G., H. & S. A. Ry. Co. v. Karrer, 109 S. W. 440; G., C. & S. F. Ry. Co. v. Levi, 76 Tex. 337, 13 S. W. 191, 8 L. R. A. 323, 18 Am. St. Rep. 45. Since under the findings of the jury the appellant was negligent in unloading and delaying the shipment at Baird, all the assignments relating to the treatment of the cattle at that point and giving and refusing of charges upon that phase of the case become immaterial, and the general rule as to the measure of damages for delay applies. For this reason the market value of the cattle at the time when they would have reached Fort Worth, if transported with reasonable diligence, was the proper matter for inquiry and consideration.

[4] Admitting that at least a part of the argument made by plaintiff's counsel was highly improper, it seems from the record that upon objection by defendants' counsel the statements were withdrawn and the jury was instructed by the court not to consider it. The verdict is not excessive, but seems to be in the exact amount which the evidence

shows to have been the damages sustained. Therefore no injury is shown by the improper argument of counsel. Although the two findings of the jury as to the loss of weight might have authorized a double recovery, the judgment was entered for a loss of 50 pounds each for the calves at the market price and a recovery of one cent per pound depreciation for the entire lot. Since the proper judgment has been entered, these assignments will also be overruled.

Finding no reversible error, the judgment is affirmed.

### On Motion for Rehearing.

[5] In the original opinion it is stated that where the employees of a company suddenly abandon its service, and, while offering no violence and causing no forcible obstruction of its business, simply refuse to work or to further discharge their duties, for any delay consequent thereon, as, for instance, where there is a failure to supply promptly their places, the carrier is liable. This language was quoted from 4 R. C. L. p. 744, § 212, and seems to be supported by the weight of authority in other jurisdictions. Upon a review of the authorities in Texas, however, it appears that the railway company is liable only in the event it fails to use reasonable diligence in supplying the places of the striking employees, and the original opinion is so modified. At the request of the appellants, the receivers, the jury was charged that the only duty resting upon the defendants as carriers was to exercise ordinary care and diligence to overcome the obstacles interposed and to forward the plaintiff's cattle and deliver them at destination as promptly as reasonable diligence and care would permit and require under the circumstances. No issue was submitted to the jury inquiring whether the receivers had exercised such diligence, and the first finding of the jury, to the effect that the receivers did not transport the cattle within a reasonable time after they received them at Sweetwater, supports the judgment upon this issue.

The motion for rehearing is in all else overruled.

---

⊜⊐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes