ST. LOUIS ·& SAN FRANCISCO RAILROAD COMPANY *v.* VAUGHAN.

Opinion delivered November 16, 1908.

1.  CARRIERS—LIVE STOCK SHIPMENT—EFFECT OF MISLEADING INFORMATION. —Evidence that a railroad station agent informed a shipper of livestock that he could get his cattle moved right away, upon which he relied and left his cattle loaded in the cars for over ten hours on a cold and rainy night in midwinter, before they were moved, instead of taking them out and caring for them during the delay, as he would otherwise have done, and that the cattle were materially injured by the delay, was sufficient to sustain a finding that the railroad company was negligent. (Page 145.)

2.  APPEAL; AND ERROR—INVITED ERROR.—Appellant cannot complain that an instruction given by the court at the instance of the appellee assumed certain facts to amount to negligence if an instruction given at appellant's request submitted the same facts as constituting negligence. (Page 146.)

3.  CARRIERS—NOTICE OF INJURIES—WAIVER.—A provision in a bill of lading of livestock to the effect that notice in writing shall be given of any damages claimed may be waived by the carrier. (Page 146.)

Appeal from Little River Circuit Court; *John W. Head,* Special Judge; affirmed.

STATEMENT BY THE COURT.

Vaughan brought suit against the St. Louis & San Francisco Railroad Company, alleging that he had six cars of cattle which were delivered to it in good order for shipment on January 6, 1906, and that the company carelessly and negligently allowed the cattle to remain in the cars on the side track at Ashdown for an unreasonable length of time, without food and water, and without being removed from the cars for exercise and rest, by reason of which twenty of the cattle died and 276 were reduced in weight, making a total damage in the sum of $872. The railroad company answered, denying all the allegations relating to its negligence, and setting forth a written contract for the transportation of the cattle, executed by the plaintiff in consideration of a reduced freight rate, limiting the liability of the company. The trial resulted in a verdict for plaintiff for $432, and the defendant company appealed, and the judgment was reversed by this court. *St. Louis & San Francisco Railroad Company* v. *Vaughan,* 84 Ark. 311.

The court said: "The complaint contained no allegations

of negligence on the part of appellant's servants in inducing the plaintiff to load his cattle in expectation of a train at an early hour to take them away, or at any particular time. No such issue was brought into the case by the pleadings, and it was error to permit proof to be introduced upon it, over the objection of defendant, or to submit it to the jury."

On the remand of the case, the plaintiff filed an amendment to the complaint, alleging that the defendant was negligent in that its station agent induced the plaintiff to deliver his cattle to the defendant in expectation of a train at an early hour and within a short time to take away and transport said cattle, and by reason of said negligent act the plaintiff delivered his cattle to the defendant to be transported, and the cattle were negligently delayed at Ashdown for a period of twelve hours. The case was tried upon this issue, and resulted in a verdict in favor of the plaintiff for $734. The defendant company filed a motion for a new trial, which was overruled by the circuit court on condition that the plaintiff enter a remittitur of $134, which was done, and judgment was rendered for $600 for the plaintiff; from which the railroad company has appealed.

. Parts of the contract of shipment, the testimony of the train dispatcher and some other facts pertinent to these issues may be found in the opinion of the court in 84 Ark. pages 312 and 314. The substance of Vaughan's testimony was as follows: His cattle had been loaded at Locksburg, and were shipped to DeQueen, reaching there about one or two o'clock; they were then taken over the Kansas City Southern Railroad to Ashdown, the point of intersection of the Kansas City Southern with the Frisco Railroad, which place they reached between six and seven o'clock that evening. Immediately upon reaching the Frisco crossing at Ashdown, Vaughan left the train, and went to the Frisco depot, and asked the agent when he could get his cattle shipped to Boswell, I. T., and the agent told him right away, saying that there would be a train right away, and asked him for his way-bills. When told that he did not have them, he told Vaughan to hurry over to the Kansas City Southern train and get them, so that he could get out right away. He went back and got the way-bills and took them to the agent of the Frisco and filled out the contract of shipment to Boswell. He

wanted to ascertain if he could get out immediately, in order that, if he could not do so, he could unload the cattle in the Kansas City Southern stockyards, and keep them there, or herd them till ready for shipment over the Frisco. His reason for this was that cattle will stand with their heads up and not try to fight or hook one another as long as the cars are running; but when the cars are still they fight and hook each other all the time; and they are also more likely to get down when the cars are standing still than when they are running; that he is an experienced cattle man, and knows that the cattle will suffer more in one hour when standing than in five hours running. When the agent of the Frisco told him he could get them out right away, he had executed the contract of shipment, and had the cattle transferred from the Kansas City Southern Railroad to the Frisco railroad. This was about 7:00 o'clock P. M., and they were left in the cars until 5:30 the next morning, when they were taken up by a special engine sent from Hugo, and taken to Boswell, reaching there about one o'clock in the afternoon, making a good trip from Ashdown to Boswell. He says the cattle were in good condition when delivered to the Frisco, but that the next morning twenty of them were dead or in a dying condition, and, owing to their standing in the cars all night, the balance were terribly jaded, skinned and crippled. He says that he was familiar with the market at Boswell, and they would have been worth on the market there $2,941, had they been properly cared for; but that they were worth only $2,069 in the condition in which they arrived. He also tells of the notification to the agent at Boswell of their condition and of his claim, and that the agent made a detailed examination of them, pursuant to his notice of claim for damages.

The testimony of the station agent and the chief dispatcher shows that the next train due to leave Ashdown for Boswell was 9:30 the next morning; that the cattle could not be carried to Boswell earlier than that except by special train, and that could be procured only at Hugo, 88 miles distant; that the agent notified the train dispatcher at Hugo of the load of cattle awaiting shipment for Boswell, and that a special train was sent from Hugo to Ashdown, which took the cattle away at 5:30 next morning. Hugo is 88 miles from Ashdown, and the ordinary

time to make the run takes six or seven hours; and it would require about two hours to get the train crew ready to leave Hugo.

The first instruction was a statement that all the allegations of negligence contained in the complaint were withdrawn from the consideration of the jury, save and except that allegation pertaining to the negligent inducement by the agent of the defendant by the promise of an early train to take out his stock.

The second instruction was upon the question of waiving the provision of the contract about a written notice of any claim for damages. It is admitted to be abstractly correct.

The third instruction is as follows: "The court instructs the jury that a common carrier can not contract against its own negligence; and if you believe from a preponderance of the evidence that the defendant's station agent, prior to the time plaintiff received his cattle from the Kansas City Southern Railway Company, induced the plaintiff to deliver his cattle to it at Ashdown in the expectation that said cattle would be taken out by one of its trains at an early hour, when said agent in fact did not know when he could get a train to move such cattle, and that plaintiff relied upon such representations, and would not have delivered his cattle to defendant but for such representation, and that thereafter no train came to take such cattle until 5 A. M. the next morning, and by reason of such delay at Ashdown plaintiff's cattle or any of them were injured as a proximate result of such delay, then you are instructed that defendant was guilty of negligence for which it would be liable to plaintiff."

The fourth instruction limited the recovery to $16 per head or a proportional part thereof for any injury to the cattle, on account of the clause in the contract of shipment to that effect.

The fifth instruction told the jury that in no event could the plaintiff recover for any injuries that may have been done to the cattle by reason of their inherent weakness, viciousness or natural propensities.

The sixth instruction was upon the measure of damages.

At the instance of the railroad company the court gave ten instructions. The second, third and fourth are as follows:

"2. The jury are instructed that if from the testimony

they believe that the cattle that died after the shipment was received by the defendant would have died if they had been unloaded in the Kansas City Southern pens that night and reloaded January 3rd, or that the plaintiff would not, in fact, have unloaded his cattle in the pens at Ashdown, if he had an opportunity to do so, or that the plaintiff was not, in fact, by any statements or representations of the agent at Ashdown, induced to make the contract in this case and deliver his cattle to the defendant, then, in either of the above cases, your verdict shall be for the defendant.

"3. The jury are instructed that there was no actionable negligence on the part of the defendant and its employees in the handling of this shipment at Ashdown, and as to those allegations in plaintiff's complaint and the testimony relative thereto, to the effect that the cattle belonging to the plaintiff were negligently and carelessly permitted to remain in the cars on the side track before being removed toward their destination, your verdict should be for the defendant; or, to put this instruction differently, it was not negligence to leave the cattle on the transfer track from the time the proof shows they were delivered by the Kansas City Southern Railroad in Ashdown until 5:30 o'clock the next morning. The railroad company, the proof shows, moved the shipment with reasonable dispatch, and did all in reference to the movement of same that the law requires.

"4. You are instructed that the plaintiff is bound by the conditions and the limitations in the contract introduced in evidence in this case, and same precludes a recovery by him as to all damages sustained by him in connection with the actual handling and transportation of the shipment at Ashdown, and from Ashdown to Boswell. He alleges, however, that he was induced to deliver his cattle, and to make said contract by the negligence of the agent in representing that a train would arrive within a short time and carry said cattle to their destination. Now, in no event could said allegations apply, except to cattle that died after being received by the defendant at Ashdown, unless you find that written notice of damages was waived by defendant's agent. Before a recovery can be given the plaintiff under this phase of the case for the value of the cattle, if any, that you find died after same were received by the defendant at

Ashdown, or for any injuries sustained by the other cattle at Ashdown, if any, you must believe, in the first place, from a preponderance of the testimony, that the agent did in fact misrepresent the facts to the plaintiff in reference to the time when his shipment would be carried out; and then, in the second place, that the plaintiff relied solely upon said representations, and was induced by same to make the contract at the time he did and deliver the cattle at the time he did, and that he would not have made the contract and would not have delivered his cattle at the time he did unless such representations had been made; then, in the third place, you will have to find that, as a consequence of such misrepresentations on the part of the agent, and in reliance on the part of the plaintiff, something was done by the plaintiff that he would not have done, or something was left undone that he would have done, if such representations had not been made; and, further, as a direct consequence of having done such, or not having done such, the said cattle died. All this you must find from a preponderance of the testimony; and, if you do not so find, your verdict in this case must be for the defendant."

The other instructions presented various phases of the defendant's cause for the consideration of the jury in the way in which the defendant desired them to be presented.

*Glass, Estes & King,* for appellant.

1. A peremptory instruction for defendant should have been given. No negligence nor unnecessary delay was shown. 84 Ark. 311. It was error to give the third charge to the jury, as the facts do not bring this case within the rule in 63 Ark. 331. It controverts and neutralizes the contract of shipment, and assumes certain facts which were for the jury only. 101 S. W. 760; 63 Ark. 331; 21 Enc. Law (Rev. Ed.) 498-9; 110 S. W. 593.

2. Three elements are necessary, essential to the existence of negligence, a question of fact: (1) the existence of a duty to protect from injury; (2) failure to perform that duty; (3) injury from such failure. These three must unitedly operate to constitute actionable negligence. What the agent told plaintiff would be a contract, not negligence, and a failure to get the cattle out "right away" would be a breach. The damages recov-

erable would be governed by the law applicable to breach of con-
tract. 8 Enc. Law (Rev. Ed.), 582; 61 Tex. 495; 71 *Id.* 76; 71
Ark. 511; 13 Cyc. 33; 110 S. W. 593.

3. Conceding that the agent misled plaintiff as to the time
of the train's departure, *after that* he made a contract of ship-
ment waiving these misrepresentations. Such contracts have
been repeatedly upheld. 63 Ark. 551; 67 *Id.* 407; 101 S. W. 760;
50 Ark. 397; 103 S. W. 174.

4. To recover it was necessary to show, not only that the
agent misled him as to the time the train would leave, but also
that he would and could have done something he did not do, and
by so doing would have avoided the injury. 63 Ark. 331;
21 Enc. Law (Rev. Ed.), subd. XI, p. 498. The agent
should also have been apprised of the conditions and circum-
stances that made the damages likely to result from his misstate-
ments. 71 Ark. 571; *76 Id.* 220; 76 S. W. 1057; 88 *Id.* 870.

5. The court should have given the special charge grouping
the particular facts relative to the matter in conformity with the
testimony. 102 S. W. 695.

6. No waiver is shown; the burden was on plaintiff. 63
Ark. 331; 38 S. W. 515; 55 *Id.* 215; 68 *Id.* 249; 83 *Id.* 33; 101
*Id.* 760; 70 Ark. 68.

7. The damages were excessive. The plaintiff's testimony
and opinion were irrelevant and incompetent. 68 Ark. 217; 57
S. W. 258.

*G. G. Pope* and *Will Steel,* for appellee.

1. Objection to an amendment to a complaint that even sets
up a separate cause of action is waived by filing an answer to it.
81 Ark. 579; 67 *Id.* 14; 64 *Id.* 450.

2. No notice as to dead cattle is required, and notice as to
living, damaged cattle may be waived and was. 63 Ark. 336; 70
*Id.* 406; 52 *Id.* 11.

3. A shipper has the right to rely on the statements and
information given by agents and act upon same, and the com-
pany is bound by his misrepresentations. 81 Ark. 469; 63 *Id.*
337. It is the duty of carriers to inform shipper of unnecessary
delays.

4. The alleged contract was void, (1) for misrepresenta-
tions of the agent before it was signed; (2) because it was the

only form the agent was authorized to execute, and the shipper had to take that or none.   1 Page on Contracts, § 77; 57 Ark. 112.

HILL, C. J., (after stating the facts).   1.   The first matter submitted is that there should have been a peremptory instruction in favor of the defendant.   It was held on the former appeal that the undisputed testimony showed that the railroad company exercised reasonable diligence in furnishing facilities and in transporting the cattle to the destination after delivery to it; and it was pointed out that the law does not require railroads to keep engines and cars at stations at all times to move freight offered for shipment; that this would be an unreasonable requirement; and that the requirement of reasonable care and diligence had been met in this case in furnishing the transportation after the cattle were delivered.   The case, however, had been tried upon an issue which was not in the pleadings, and to the evidence to sustain it the defendant had objected; and for that reason the judgment was reversed.   *St. Louis & S. F. Rd. Co. v. Vaughan,* 84 Ark. 311.   It was held that under the undisputed facts no other cause of action appeared, and this one had been improperly introduced.   It must be held that the facts adduced on behalf of the plaintiff were sufficient to make out a charge of negligence. Mr. Hutchinson says: "He must, at his peril, inform the shipper of the necessary delay, that the shipper may exercise his own discretion as to the propriety of making the shipment."  2 Hutchinson on Carriers, § 496.   This principle was applied in *Kansas & Arkansas Valley Rd. Co. v. Ayres,* 63 Ark. 331.

While no negligence can be predicated upon the failure to get out the cattle earlier than they were shipped, yet the facts testified to by the plaintiff show that he was assured before seven o'clock in the evening that he could get out his cattle right away, when in fact no regular train was due to leave until 9:30 the next morning, and no special train could be got to him short of eight or nine hours.   Upon this he relied, and left his cattle loaded in the cars, instead of taking them out and caring for them during the delay, as he would otherwise have done.   The undisputed testimony is that cattle kept loaded in cars standing still will be materially injured by such delay.   Especially would this be true on a cold and rainy night in midwinter.   There was suffi-

cient evidence to have sent this question to the jury.

II. It is insisted that the third instruction given by the court of its own motion is erroneous, in that it assumes certain facts to constitute negligence, when the jury alone, under proper instructions, should determine that. But the instruction, read in the light of the plaintiff's testimony and the undisputed evidence as to the effect of such delay and the long delay necessary to get them out at the time that the assurances were given of getting them out right away, prevent this criticism of the instruction from being well founded in this instance. If it be error to assume that these facts were negligence *per se,* that error has been concurred in by the appellant, for the fourth instruction, given at its instance, in another way and in better form, submits the same facts to the jury as a predicate for recovery by the plaintiff if the jury believed such facts to be true.

III. It is urged that the representations of the agent were not the proximate cause of the damage; and it is argued that the evidence shows that the Kansas City Southern yards would not have held more than three cars of cattle, and that the damage could not have been averted had Vaughan known that the cattle would not be carried out right away. But he testified to facts which, if believed, showed that he would have cared for his cattle, either in these yards or elsewhere, in a way that would have prevented the injury which they received; and this testimony presented a question for the jury to determine, and was properly submitted upon instructions given at the instance of the appellant.

IV. The provision of the contract to the effect that notice in writing must be given of the damages is also invoked; but there was evidence tending to prove a waiver of this clause, and that question was sent to the jury under proper instructions, framed in conformity to the decision in *St. Louis, I. M. & S. Ry. Co.* v. *Jacobs,* 70 Ark. 401.

V. It is insisted that the verdict is excessive. The jury gave $734, which the court required the plaintiff to remit down to $600. The limitation of $16 per head, stipulated in the contract, is not exceeded by this verdict. According to the plaintiff's testimony, twenty of the cattle were dead, and the balance seriously injured and depreciated in value. The difference in value he put

at $872. The jury gave less than the testimony warranted, and the circuit court reduced that amount, for what reason is not shown. The court is unable to see wherein the verdict is excessive. It may be that the testimony was not accurate or truthful; but that was a matter to have been argued before the jury, and not elsewhere.

Finding no error in the case, the judgment is affirmed.

### ON REHEARING.

### Opinion delivered December 7, 1908.

HILL, C. J. Appellant's attorneys forcibly reargue the questions disposed of, but after a full consideration of them the court finds no reason for changing the decision or opinion. It is insisted that "the court erred in not upholding that clause in the contract which provided that the plaintiff would waive and release the defendant from any and all liability for or on account of delay in shipping the stock after delivery of the same to the defendant's agent, and from any delay in receiving this stock after tender of delivery, as set forth in the seventh instruction requested by the appellant and refused by the trial court.

This contention was not specifically discussed in the opinion, because it was thought that it was necessarily disposed of in the discussion of the other issues. It was held on the former appeal of the case that the railroad company exercised reasonable diligence in furnishing facilities and in transporting the cattle to the destination after delivery to it. Had it been held otherwise, then the question on the contract would have been pertinent. After the reversal of the cause, the complaint was amended so as to allege negligence in that the station agent induced plaintiff to deliver the cattle to the defendant on the assurance that a train would soon arrive to take away and transport his cattle; and that the plaintiff, relying upon these assurances, delivered his cattle to the defendant to be transported, and they were negligently delayed at Ashdown for a period of twelve hours. The action was then turned into one against the company for misleading assurances given by its agent which induced the shipment, and not for one growing out of the shipment itself. The contract relating to the shipment, but it went out of the

case when the action was predicated upon the false or negligent assurances which were made by the agent which induced the delivery of the cattle to the appellant company. Therefore, no discussion was called of the contract itself, nor any consideration of its terms, or whether in fact it was a binding contract.

The motion is overruled.