ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* DAVENPORT.

Opinion delivered December 19, 1910.

1.  CARRIERS—LIVESTOCK—DUTY TO FEED AND WATER.—Under the act of Congress forbidding railroads to confine cattle longer than 28 consecutive hours without unloading them for rest, water and feed for at least five hours (34 Stat. at L., 607), it was not negligence for a railway company, in an interstate shipment of cattle, to stop the shipment for rest, water and feeding of the cattle at a convenient place when it was apparent that it could not be delivered at destination within the 28-hours limit.    (Page 85.)

2.  SAME—LIVESTOCK—DELAY IN SHIPMENT.—Where a railway company stopped a shipment of cattle for food and rest, as required by the Federal statute, for 12 hours and until the cattle could be carried by a fast freight train, instead of sending them by a slow train, which would have reached the destination no sooner, it was error to submit to the jury the question whether the railroad company was guilty of unreasonable delay.    (Page 85.)

3.  INSTRUCTION—APPLICABILITY TO ISSUES.—Where the complaint in an action against a carrier for delay in shipping livestock alleged no damage on account of the condition of the pen in which the cattle

were fed and .watered, it was error to submit to the jury the question whether the cattle were injured on that account. (Page 86.)

Appeal from Marion Circuit Court; *Brice B. Hudgins, Judge;* reversed.

*W. E. Hemingway, E. B. Kinsworthy, Horton & South* and *James H. Stevenson,* for appellant.

KIRBY, J. This action is by W. T. Davenport against appellant to recover damages to a car of cattle shipped from Yellville, Ark., to East St. Louis, Ill., on July 4, 1908, caused, it was alleged, by unreasonable delay in their transportation. The railroad company denied that the cattle were delayed in transit, and that appellee was damaged at all by any negligence whatever on its part; alleged a special contract of shipment made limiting its liability, setting it out, and that it forwarded the cattle to market at reasonable speed with due diligence and without unreasonable delay.

The testimony tended to show that appellee loaded 45 head of cattle into the car at Yellville on July 4, 1908, about 11 A. M. for shipment over appellant's road to East St. Louis, Ill., and left in a few minutes, and reached Newport that night at 12:45 in the morning. Upon appellee's refusal to sign a 36-hour release the car was switched back for unloading, feeding and watering and placed at the chute for unloading at 1:20 A. M. They were sent forward at 2 P. M. on the first train they could have gone on after being unloaded, fed and watered, or rather on a fast train that reached St. Louis on the same time as the one leaving Newport at 8:48 A. M. The freight trains that passed Newport upon which they could have been carried during the 14 hours the stock remained there were No. 80 at 12:49 A. M., an extra at 5 A. M. and one at 8:48. The stock had been on the road from Yellville to Newport 13 hours and 15 minutes; and if they had caught No. 80, which was standing on the track at the time they arrived at Newport, 30 hours and 15 minutes would have elapsed before reaching St. Louis in the usual moving of trains. Such stock are not allowed to be unloaded and fed and watered in stock pens in Missouri, and could not have reached market any sooner by being fed at Hoxie, instead of Newport. Seventeen to twenty hours is a good run from Newport to St. Louis, and

three hours are required by the Terminal Association to deliver stock from St. Louis to East St. Louis, Ill., the place of destination of this shipment. Nor will said Terminal Association receive cattle that have been on the road without feed and water more than 25 hours.

The evidence was conflicting as to the condition of the pen at Newport where the cattle were unloaded and fed, and tended to show there was a good deal of deep mud in it near the water trough.

The following among other instructions were given over appellant's objections:

"1.   Gentlemen of the jury, if you find from a preponderance of the evidence that the defendant negligently and carelessly delayed the shipment of the plaintiff's cattle at Newport, Arkansas, for an unreasonable and unnecessary length of time, and that by reason thereof said cattle depreciated in weight and value, you will find for the plaintiff, and assess his damages at such a sum as you may find from the evidence will be a fair and just compensation for the difference, if any, between the reasonable market value of the cattle, had they arrived at their destination within the usual, ordinary and reasonable time, and the reasonable market value of said cattle at the time of delivery; and if you find that any of such cattle were killed or injured through the alleged negligence and carelessness of the defendant as aforesaid, then you will assess the damages of plaintiff by reason thereof for such a sum as will be the reasonable market value of the animals so killed, if any, and for the difference between the reasonable market value of any animal injured, if any, and its reasonable market value at the time, had it not been injured.

"2.   You are instructed that if you find from the evidence that the cattle were delayed at Newport on the defendant's road, the defendant cannot avail itself of any defense for said delay on the ground that it was complying with the laws of the United States, if you find from the evidence that the stockpen where the cattle were unloaded for feed, rest and water was in such a condition that the stock could not be fed, rested and watered therein."

A verdict for $75 damages was rendered against appellant, and it appealed.

The only delay complained of occurred at Newport, and appellant contends it was caused by stopping to comply with the terms of the Federal statute regulating the interstate shipment of cattle, known as the 28-hour law, which provides: "No railroad carrying or transporting cattle * * * from one State * * * to another shall confine the same in cars, boats or vessels of any description for a period longer than twenty-eight consecutive hours without unloading the same in a humane manner into properly equipped pens for rest, water and feeding for a period of at least five consecutive hours, unless prevented by storm or by other accidental or unavoidable causes which could not have been anticipated or avoided by the exercise of due care, diligence and foresight; provided that, upon the written request of the owner or person in custody of that particular shipment, * * * said time of confinement may be extended to thirty-six hours. In estimating the time of confinement the time consumed in loading and unloading shall not be considered." 34 St. at L., 607; Fed. Stat. Ann. (Supp.) 43.

The testimony shows that appellee refused to sign the 36-hour release at Cotter, and again refused to sign it on arrival at Newport, and the car of cattle was stopped to be rested, fed and watered. The uncontradicted testimony shows that this shipment of cattle in the usual course of business would not be carried to its destination, East St. Louis, Ill., in time to avoid the violation of this statute, and in fact that it could not have arrived within the prescribed 28 hours if it had not been delayed and had gone on from Newport on the train leaving on its arrival there. The cattle had been on the road 13 hours and 15 minutes upon arrival at Newport; and if they had gone on immediately on No. 80, 30 hours and 15 minutes would have elapsed before their arrival in St. Louis. The five or six o'clock train passed before the rest and feeding period expired, and the only other train upon which they could have gone before they did leave Newport at 2 P. M. passed at 8:48 A. M., and was a slow train, and reached St. Louis on the same time as did the faster train upon which they were carried.

It was the duty of the railroad company to stop the ship-

ment for rest, water and feeding of the cattle at a convenient and proper place, which it could select if not unreasonably or arbitrarily done, when it was apparent that it could not be delivered at destination in the usual course of business within the 28-hour limit, appellee having refused to sign the 36-hour release; and such delay in the performance of this duty was not negligence on its part. *Nashville, C. & St. L. Ry.* v. *Heggie,* 86 Ga. 210; *Chicago, B. & Q. Ry. Co.* v. *Slattery,* 107 N. W. 1046; *Nashville, C. & St. L. Ry.* v. *Parker,* 27 So. 326; *Louisville & N. R. Co.* v. *Smitha,* 40 So. 116; *Brockway* v. *American Express Co.,* 47 N. E. 87; *Galveston, H. & S. A. Ry.* v. *Warnken,* 12 Tex. Civ. App. 645.

There was no testimony tending to show that such delay was unreasonable. It follows that instruction number 1 should not have been given. No damage was claimed on account of the condition of the pen at Newport; and since the cattle were in fact unloaded and fed there, said instruction number 2 was not the law under the case made, was contradictory of a correct instruction given, and was prejudicial and misleading.

For the errors indicated the judgment is reversed, and the cause dismissed.