<hr />

### WEBSTER v. UNION PAC. R. CO.

(District Court, D. Colorado. September 17, 1912.)

No. 5,772.

1. CARRIERS (§ 218*)—TRANSPORTATION OF LIVE STOCK—LIMITED LIABILITY—VALUATION CONTRACT.

A contract for the transportation of animals, limiting the carrier's liability, in case of loss by the carrier's negligence or otherwise, to a specified valuation, fairly made and in consideration of a reduced freight rate, will be upheld.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696, 927, 928, 933–949; Dec. Dig. § 218.*]

2. CARRIERS (§ 227*)—TRANSPORTATION OF ANIMALS—CONTRACT FOR CARE DURING SHIPMENT.

In an action against a carrier for injuries to a shipment of sheep, a provision of the shipping contract that, in consideration of a reduced freight rate, the shipper assumed the duty to load, unload, reload, feed, water, tend, and care for the sheep at his own risk during the entire transportation, was valid; and an averment that all the injuries sus-

tained by the sheep were due to plaintiff's carelessness in and about such matters, and that proper facilities were provided by defendant, stated a defense.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 953–956; Dec. Dig. § 227.*]

3. CARRIERS (§ 227*)—LIVE STOCK—ACTIONS—ANSWER—DEMURRER.

Where a complaint for injuries to certain sheep while being transported by defendant did not proceed on any failure of defendant with respect to loading or unloading facilities, an alleged defense, bearing on the condition of defendant's facilities for unloading, etc., was demurrable, as not germane.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 953–956; Dec. Dig. § 227.*]

4. CARRIERS (§ 227*)—TRANSPORTATION OF ANIMALS—INJURIES—DEFENSES—LIMITED LIABILITY—CONTRACT.

In an action for injuries to certain sheep while being transported over defendant's road, a defense that any loss or damage was due to causes beyond defendant's control, shrinkage in weight, changes in weather, heat, cold, or causes not resulting from defendant's negligence, and that for injuries so caused defendant was not liable under a limited liability contract, executed in pursuance of a reduced rate, was not demurrable.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 953–956; Dec. Dig. § 227.*]

5. CARRIERS (§ 216*)—TRANSPORTATION OF ANIMALS—INJURIES—DEFENSES.

A defense that the injuries to plaintiff's sheep in transit were due to the inherent nature, propensities, habits, disposition, and condition of the sheep, and not to any negligence of defendant, or its agents or servants, is sufficient.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 929; Dec. Dig. § 216.*]

6. CARRIERS (§ 35*)—TRANSPORTATION OF LIVE STOCK—TWENTY-EIGHT HOUR LAW.

Under the Twenty-Eight Hour Law (Act June 29, 1906, c. 3594, 34 Stat. 607 [U. S. Comp. St. Supp. 1911, p. 1341]), prohibiting the confinement of animals transported in interstate commerce for a period longer than 28 consecutive hours, save only that, by special agreement and written request of the owner, the time may be extended to 36 hours, an agreement between a carrier and owner to confine the animals for a period longer than 36 hours is void.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 94; Dec. Dig. § 35.*

Liability of carrier for failure to feed, water, and rest live stock, and for violation of Twenty-Eight Hour Law, see note to St. Joseph Stockyards Co. v. United States, 110 C. C. A. 435.]

At Law. Action by Samuel F. Webster against the Union Pacific Railroad Company to recover damages to certain sheep. On demurrer to answer. Sustained in part, and overruled in part.

T. J. Leftwich, of Ft. Collins, Colo., for plaintiff.

Hughes & Dorsey and E. I. Thayer, all of Denver, Colo., for defendant.

POPE, District Judge. This cause has been submitted to the court upon a demurrer to the several defenses set up in defendant's answer to the second amended complaint. Upon the hearing the second defense was by agreement amended by interlineation, and the demurrer

thereto announced abandoned. Likewise, upon the hearing, the demurrer to the seventh defense was announced abandoned. This leaves for consideration only the demurrer to the third, fourth, fifth, sixth, eighth, and ninth defenses to each of the two causes of action. The questions involved as to each cause of action being the same, the following conclusions apply to the answer to each cause of action. The conclusions of the court are as follows:

[1] 1. The third defense sets up a reduced freight rate, in consideration of which it is alleged that there was an agreed valuation of the animals shipped not exceeding $3 per head. Whatever may be the proofs on the trial, the allegations of the answer bring the case within Hart v. Railroad, 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717. See full discussion in 1 Hutchinson on Carriers (3d Ed.) §§ 425–430; also Railway v. Rodgers, 16 N. M. 120, 113 Pac. 805, and "In the Matter of Released Rate," 13 Interst. Com. R. 551. The cases last cited contain a full citation of authorities pro and con, showing the distinction between an arbitrary and inadequate valuation and an agreed valuation based upon a cheaper rate of transportation.

[2] 2. The fourth defense sets up a special reduced rate of freight and a special contract of carriage, whereby the plaintiff shipper was to load, unload, reload, feed, water, tend, and care for the sheep at his own expense and risk during the entire transportation, and further alleges that any injuries suffered by the sheep were due to the carelessness of the plaintiff in and about such matters, and notwithstanding that proper facilities were provided by the defendant. It is not perceived why such agreement would not be valid as between the shipper and the railroad company. Its terms do not contravene the provisions of Act June 29, 1906, c. 3594, 34 Stat. 607 (U. S. Comp. St. Supp. 1911, p. 1341), known as the "Twenty-Eight Hour Law," since that act in terms provides that the owner of the animals shall primarily be charged with feeding and watering them. While such a provision would not afford any defense to a prosecution by the government for failure of the railroad company, upon the owner's default, it is, as between the owner and the railroad, a sufficient defense, since it is tantamount to an allegation that the railroad company was not itself negligent, but that the negligence was that of the owner of the animals in and about a matter as to which such owner had contracted to assume the sole responsibility. Mo. Pac. Ry. Co. v. Tex. & Pac. Ry. Co. (C. C.) 41 Fed. 913.

[3] 3. The fifth defense is subject to demurrer, for the reason that it sets up certain matters bearing on the condition of the facilities afforded by the railroad for unloading, etc., when the complaint does not proceed upon any failure of the defendant in these respects as a ground of recovery.

[4] 4. The sixth defense is that the shipment was at a special reduced rate of freight and under a special contract of carriage, whereby defendant was not to be liable for damage by causes beyond its control, shrinkage in weight, changes in weather, heat, cold, or other causes not a result of defendant's negligence, and in which defense it is

alleged that any loss and damage was due to these causes, and was not directly or indirectly the result of defendant's negligence. This defense is good against demurrer, under Hart v. Railroad Co., supra, and because it is in effect a denial of the acts of negligence alleged against defendant as a basis of recovery.

[5] 5. The eighth defense sets up that the injuries, if any, were due "to the inherent nature, propensities, habits, disposition, and condition of said sheep, and not to the negligence of the defendant, or its agents or servants." This defense is good, being in effect an allegation that the injuries resulted from causes other than defendant's alleged negligence.

[6] 6. The ninth defense is that plaintiff "specially requested the defendant to confine, and agreed and consented to the confinement of, the shipment of sheep in the cars for a period described in the complaint, and waived all loss and damage, if any, resulting in whole or in part from such confinement." The demurrer to this defense must be sustained, for the reason that it sets up an agreement between the parties contrary to the provisions of the Twenty-Eight Hour Law. That law positively prohibits the confinement of animals for a period longer than 28 consecutive hours, save only that by special agreement and written request of the owner the time of confinement may be extended to 36 hours. The extreme limit, therefore, to which the wishes of the owner became relevant, is 36 hours. An agreement, therefore, for a confinement beyond that time, is a contract to do that which the law says may not be done, and is void and nonenforceable as a defense to the action.