ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* NUNLEY.

Opinion delivered October 11, 1915.

1. CARRIERS—DAMAGE TO FREIGHT—NOTICE—WAIVER BY CARRIER.—The provisions in a contract made by a carrier and a shipper of freight requiring that the shipper give written notice of the place and nature of injuries received, to the nearest station agent or other agent of the carrier, may be waived by the carrier.

2. CARRIERS—DAMAGE TO FREIGHT—NOTICE—WAIVER.—A shipment of freight belonging to plaintiff was damaged by defendant carrier, and plaintiff proceeded at once to notify the carrier of the damage. *Held*, under the evidence, the acts of defendant's employees were such as to amount to a waiver of the written notice required to be given to the carrier, under the terms of the contract between the parties.

3. CARRIERS—DAMAGE TO FREIGHT—AMOUNT.—Plaintiff shipped mules by defendant carrier. In an action for damages for injuries to the same, *held*, the evidence warranted the verdict of the jury awarding damages.

Appeal from Pulaski Circuit Court, Third Division; *G. W. Hendricks,* Judge; affirmed.

### STATEMENT BY THE COURT.

John Nunley sued the St. Louis, Iron Mountain & Southern Railway Company to recover damages to a car of live stock shipped over defendant's line of railroad. The facts are as follows:

On January 14, 1914, John Nunley shipped a car load of horses and mules from Russellville, Arkansas, to Ar-

genta, Arkansas. He accompanied the shipment and rode in the caboose. The stock were in good condition when they left Russellville and arrived at Argenta some time after midnight on the day of shipment.

John Nunley testified that when the train arrived at Argenta the car load of live stock was switched on to a sidetrack; that he and the conductor went forward and examined the live stock and found that they were in good condition; that the next morning he found that the car had been moved about a mile to where the stock yards were situated, that the stock had been unloaded in the yards, and that one of the mules was dead and others injured.

He put in a claim for damages for the mule killed for $100 and for the others injured as follows:

"One mule, $75; one mule, $30; one mule, $25; one mare, $25, and one pony, $15."

Nunley testified also that several other head of stock were injured for which he put in no claim for damages. He testified that as soon as he discovered that the animals had been injured he went to the depot at Argenta and notified the man in charge there that his stock had been injured and that the person in charge directed him to a building in Little Rock where he should go to put in his claim for damages; that he went over to Little Rock and employed an attorney and that he and the attorney then went to the building where he had been directed by the station agent; that a young man in charge of the office to which he had been directed to go entered into negotiations with him looking toward a settlement of his damages; that the young man went over to Argenta with him and his attorney to examine the injured stock; that the young man told him the company would pay him damages for the injury to them; that subsequently he returned to the same office and was told by another person there that the dead mule had not been injured by the railroad but had died of colic and that the other stock had not been injured.

A witness testified in behalf of the plaintiff that he saw the stock before they were shipped and that they were in good condition at the time of shipment, and that the plaintiff brought back several head of the stock with him and that they appeared to be badly injured.

Another witness who lived in Argenta testified that he saw the stock after they were unloaded and stated that several of them were badly injured. He described specifically some of the injured stock and placed the damage at as large or a greater amount than that testified to by the plaintiff.

Another witness testified that he had been in the stock business and had shipped a great many head of stock and that he examined the horses and mules in question after they had been unloaded from the car and that quite a number of them had been injured. He said that he did not think from the appearance of the injuries that they were received by the animals fighting and that they did not appear to be injuries which resulted from their kicking or biting each other.

On the part of the railroad company the conductor in charge of the train testified that there were not any unusual jars or jolts on the way and said that he did not examine the stock after the train arrived at Argenta.

The agent, whose duty it was to adjust and settle claims of this sort, admitted that the plaintiff came to him for settlement of the claim and said that he stated to him that one of the mules had died of colic and that none of the other mules had been injured. He testified that he was the only person in his office authorized to adjust and settle claims of this sort and that the only other person employed in the office was a young man who was a stenographer and that he did not have authority to settle damage claims.

A veterinary surgeon who had been employed by the claim adjuster to examine the stock testified that he cut open the dead mule and that the mule had died of colic. He also stated that he had examined the remainder of the stock and that none of them was injured.

Another witness for the railroad company testified that he was in a car with stock of his own from Russellville to Argenta; that the plaintiff's stock were in a car near to the one in which he rode and that he heard the plaintiff's animals biting and fighting each other on the way down. He admitted, however, that there was some switching after the train arrived at Argenta and that he did not know what occurred there.

The jury returned a verdict for the plaintiff in the sum of $170 and the defendant has appealed. Other facts will be referred to in the opinion.

*E. B. Kinsworthy* and *W. G. Riddick,* for appellant.

1. Under the contract, as a condition precedent to recovery of damages against appellant for injury to the stock, it was necessary, and the burden was on appellee to show, that he gave the notice in writing as provided by the contract of his claim for such damages, or that such notice was waived by the appellant. 82 Ark. 353.

Where a contract such as was in evidence in this case, contains the provision that no agent of the defendant had authority to waive any of its provisions, as was the case here, waiver can not be predicated upon the acts of an agent of the defendant. 6 Cyc. 509; 63 Kan. 255, 65 Pac. 261.

2. The verdict was excessive. The only proof in the record of the amount of the damages is the appellee's statement to the effect that he considered the various items of his bill a reasonable estimate of the amount of damages to the stock. This amounted to no evidence at all. 70 Ark. 401; 68 Ark. 224.

3. If it be conceded that the court was correct in charging the jury that the burden was on appellant to prove that the death of the live stock was due to natural causes, and that the injuries to other live stock was due to inherent vices and natural propensities of the animals, the burden upon the whole case was none the less on the appellee to prove all material allegations of the complaint by a preponderance of the evidence, and the court erred in refusing so to instruct the jury. 6 Cyc. 517; 52 Ark. 26.

But under the evidence the instructions given as to the burden of proof were erroneous. Appellee, as shown by the record, accompanied the live stock, which was shipped under the special live stock contract in evidence, which provided that appellant should be exempt "from liability for loss or damages arising from * * * overloading, crowding, maiming or other accidents or causes not arising from the negligence of the first party," and that appellee should "assume all risks and expense of feeding, watering, bedding and otherwise caring for the live stock * * * while in the cars, yards, pens or elsewhere, and load and unload the same at his own expense and risk." The burden was therefore upon the appellee to show appellant's negligence. 6 Cyc. 524; 50 Ark. 397; 81 Ark. 469.

*Carmichael, Brooks, Powers & Rector,* for appellee.

1.    The evidence shows conclusively that the animals were in good condition when loaded into the car at Russelville, and that one was dead and others injured and damaged as stated in the account, when called for by the appellee the next morning. Here was a *prima facie* case made out, and if there was any defense, the burden shifted to the appellant to establish it. 107 Ark. 49; 81 Ark. 469; 83 Ark. 87.

Where the shipper has shown the damage and injury to his live stock in the hands of the carrier, it devolves upon the latter to show that it was caused by the act of God, the public enemy, the inherent vices or natural propensities of the animals or from natural causes. In this case appellant has wholly failed to make any such showing. 100 Ark. 269.

2.    The "live stock contract" relied on by appellant, is not properly in evidence. It was not read to the jury by any witness nor submitted to them for their perusal. Kirby's Digest § 3145; 13 Ark. 63; 81 Ark. 6; Wigmore on Evidence, § 1185 (c).

If the contract had been properly introduced in evidence, still the only condition therein set up as a defense was waived by the appellant. The question of waiver was duly submitted to the jury, under a proper instruction

by the court, and their finding being supported by the evidence, is conclusive against the appellant.

A corporation can act only through agents. The contention that the contract could not be waived by an agent is without merit. These conditions of the contract can be waived. · 88 Ark. 138; 89 Ark. 154.

The condition in the contract requiring the shipper to assume all risks and expense of the feeding, watering, etc., was not set up as a defense in the lower court, and cannot be presented here for the first time. That defense is waived. 90 Ark. 182.

But under this condition, if it had been properly pleaded, the shipper did not release the carrier from liability for injury to the animals while being switched from the train in which the car arrived at Argenta to the stock yards. See 100 Ark. 269, 281.

HART, J., (after stating the facts). There was a clause in the bill of lading which required the plaintiff to give written notice of any claim for damages for injury to his stock while in transit and it is the contention of the railway company that the judgment must be reversed because the plaintiff failed to give the written notice of his intention to claim damages for the alleged injury to his stock.

(1)   This court has held that the provision of the contract requiring that the shipper give written notice of the place and nature of the injuries to the nearest station or other agent of the carrier may be waived by the railway company. The reason given therefor is that the object of requiring notice of the place and nature of the injuries is to give the carrier an opportunity for a full and fair investigation of such injuries when and where it will be most certain, easy and expeditious. The notice is required to be in writing so that the nature of the shipper's grievance may be definitely and clearly stated. *St. L. I. M. & S. Ry.* v. *Jacobs,* 70 Ark. 401; *St. L. & S. F. Rd. Co.* v. *Vaughan,* 88 Ark. 138; *St. L. S. W. Ry. Co.* v. *Grayson,* 89 Ark. 154; *St. L. I. M. & S. Ry.* v. *Shepherd,* 113 Ark. 248.

(2) In the present case it is insisted that there is not sufficient testimony to warrant the jury in finding that the written notice was waived by the railroad company but we cannot agree with the contention of counsel in this respect. It is true the agent whose duty it was to settle claims of this sort testified that there was no one in his office who had authority to settle such claims except himself and stated that he denied liability to the plaintiff the first time he talked to him. This agent also stated that where an animal was killed or died in transit it was his custom to have a veterinary surgeon examine the dead animal to ascertain the cause of its death if possible, and also to examine the remainder of the shipment to see if any of the other stock were injured.

On the other hand, the plaintiff testified that as soon as he discovered that his stock had been injured he went to the station agent and gave him verbal notice of the injury and of the fact that he would claim damages therefor. The station agent directed him to a certain office in Little Rock where he might put in a claim for damages. He went over to Little Rock and employed a lawyer and with his lawyer went to the office to which he had been directed by the station agent. He there met a young man in charge of the office who entered into negotiations with him looking for an adjustment of his claim and who actually went over to Argenta and examined the injured stock for that purpose. This person admitted the liability of the railroad company and promised to settle the loss with the plaintiff. . Though the claim agent testified that the young man did not have authority to adjust the loss, we think, under the circumstances, that the jury were warranted in finding that he did have such authority. He was left in charge of the office by the person whose duty it was to settle such claims and actually entered into negotiations looking to a settlement of them. Though the claim. agent testified that he always sent a veterinary surgeon to examine live stock for injuries, still the jury might have inferred that he sent the veterinary surgeon in question

because his office had been notified that the stock had been injured and of the plaintiff's intention to claim damages.

(3)  It was next contended by counsel for the defendant that there is not sufficient testimony to warrant the verdict for the amount thereof.  We do not agree with them in this contention.  The contract provided that the amount of damages to be recovered for a dead animal should not exceed one hundred dollars.  Under this clause of the bill of lading, though the mule killed in transit was worth more than $100, the plaintiff was limited in his recovery to that amount.  According to the plaintiff's testimony, the injuries to the other stock amounted to $170 and the jury returned a verdict in his favor for that amount.  It is evident, therefore, that the jury did not allow him anything for the dead mule which the testimony of the veterinary surgeon showed to have died of colic, and that he was given a verdict only for the injured stock.  The plaintiff's testimony as to the amount of the damages sustained by the stock is corroborated by other witnesses.  Though the witnesses did not take up each head of the stock in detail and state the amount of damage, they did state that several head of the stock were injured, and in the ones they did undertake to testify specifically about they placed the damage at as much or a greater amount than that testified to by the plaintiff.

There was a dispute between the witnesses as to how the stock received their injuries and this dispute was settled in favor of the plaintiff.

On the one hand the conductor of the train testified that there were no unusual jolts or jars to the train while it was in transit from Russellville to Argenta.  He also denied that he examined the stock after the train arrived at Argenta but in this he is flatly contradicted by the plaintiff.  The plaintiff testified that he and the conductor examined the stock after the train arrived at Argenta and stated that the stock was then in good condition.  He did not claim any damages for injuries alleged to have

been sustained during the trip from Russellville to Argenta. On the other hand, he bases his right of action solely on the fact that the injuries to the stock were received after the train arrived at Argenta. The testimony shows that some switching was done with the car after it was set on the side track and that when the plaintiff next saw the stock in the stock yards the next morning they were injured as testified to by him.

Although the railroad introduced testimony tending to contradict the plaintiff in this respect, we think there was sufficient testimony to warrant the jury in finding that the stock were injured after the train had arrived in Argenta and before the plaintiff saw them the next morning. The jury might have inferred that they were injured while the car was switching around in the yards at Argenta or while being unloaded by the railroad company. A witness for the plaintiff had testified that he had had considerable experience in shipping stock and that the injuries to stock were not from biting or kicking.

Finally it is contended by counsel for the railroad company that the court erred in refusing to instruct the jury that the burden of proof was upon the plaintiff to prove all the material allegations of the complaint. They contend that the court should have given this instruction because the plaintiff accompanied the shipment of stock and on that account was in a position to know in what place and in what manner they received their injuries and that, therefore, the burden of proof was upon him.

We do not deem it necessary to decide this question. As we have already seen, the plaintiff based his right of action solely on the ground that the stock received their injuries after the train had arrived in Argenta and after he had left the train. He testified positively that he and the conductor examined the stock after the train had arrived at Argenta and that they were then in good condition. The record shows that the case was tried on this theory and that counsel for the railroad company were not misled in regard thereto. Under these circumstances it cannot be said that the rule contended

for by counsel for the defendant as to the burden of proof obtains, even if it is the correct rule.

The judgment will be affirmed.