MISSOURI PACIFIC RAILROAD COMPANY *v.* BURNETT.

Opinion delivered February 5, 1923.

1. CARRIERS—CONTRACT AS TO UNLOADING LIVE STOCK.—U. S. Comp. Stat., § 8651, requiring live stock to be unloaded for food or rest within a certain number of hours, operates as a restriction on the right of contract between a shipper and a carrier in an interstate shipment, and this restriction cannot be disregarded and contractual rights built on it, and a contract conflicting therewith is void, and there can be no recovery against a carrier therein.

2. CARRIERS—AGREEMENT AS TO UNLOADING LIVE STOCK AT DESTINATION.—An agreement of a carrier not to unload hogs in the public pens at destination does not violate U. S. Comp. Stat., § 8651, limiting the number of hours within which they may be carried without being unloaded for food or rest, as it was within the legal right of the carrier to perform an agreement not to unload at destination at any particular place or in any particular manner.

3. CARRIERS—SPECIAL DAMAGES—NOTICE.—Where. a shipper of hogs explained to the carrier's agent that he did not want the hogs unloaded in public pens at destination, because, if they were, he could not sell them for the price which the consignee had agreed to pay, this was sufficient to charge the carrier with notice of special damages which might arise, and to render it liable for violation of the agent's agreement not to unload the hogs in public pens at destination.

Appeal from Lonoke Circuit Court; *George W. Clark,* Judge; affirmed.

*Thos. B. Pryor* and *Samp Jennings,* for appellant.

The court erred in refusing to give a peremptory instruction for· defendant. No agreement between the shipper and carrier relieves the carrier from compliance with the statute. U. S. Comp. Statutes, 1918, §§ 8651 and 8653. See also 205 Fed. 337; 200 Fed. 597; 186 Fed. 541; 195 Fed. 241; 200 Fed. 406; 225 Fed. 676; 258 Fed. 289; 220 U. S. 94; 97 Ark. 82. The contract or bill of lading was binding. It could not be explained or varied by parol testimony. 8 Wall. 325; 19 L. ed. 455; 215 Fed. 886; 270 Fed. 426; 93 Ark. 537; 82 Ark. 353; 46 Ark. 236; 109 Ark. 537.

*W. H. Gregory, J. F. Holtzendorff* and *Trimble &
Trimble,* for appellee.

There was no fraud shown in procuring this special
contract, and defendant was bound by its terms.  95 Ark.
150; 215 S. W. 596; 140 Ark. 231.

MCCULLOCH, C. J.  This is an action against a pub-
lic carrier to recover damages alleged to have been sus-
tained in the transportation of a carload of hogs.  The
plaintiff alleges that he shipped the hogs under a special
contract of sale for a particular purpose and for a stip-
ulated price largely in excess of the market price, and
that, by reason of the act of the carrier in unloading the
hogs at destination in pens where other hogs had been
unloaded, the consignment was rejected by the consignee,
and that loss was sustained thereby, the price being re-
duced to the market price.  There were 147 of the hogs
in the car, weighing an average of 111 pounds each, and
plaintiff had a contract for the sale of the hogs at 9¼
cents per pound, the market price of hogs for commercial
purposes being considerably less. . The aggregate value
of the hogs, as per contract price, was $1,431.88, and the
regular market price for ordinary purposes was $478.

On the trial of the cause the following state of facts
was proved: Plaintiff was engaged in buying hogs, and
had on previous occasions sold what is termed "stocker"
hogs to Black & Atchinson, of Kansas City, who operated
a serum plant, and one of the requirements of the latter
was that the hogs should not be unloaded at public yards
or pens.

After securing the contract with Black & Atchinson,
and after making purchases in the vicinity of Gurdon,
the plaintiff applied to the railroad agent at Gurdon for
terms of shipment, stating that he would not ship his
hogs unless he could make an arrangement whereby un-
loading in transit could be obviated.  The agent assured
plaintiff, so the latter testified, that such an arrangement
could be made, and plaintiff gathered up the hogs and
loaded them into the car, but when the bill of lading was

made out there was nothing in it about not unloading in transit. Plaintiff called the attention of the agent to this fact, and the agent stated that a notation would be made on the waybill, as it had no place in the bill of lading, and assured plaintiff that such a notation would be made for the instruction of the conductors and other trainmen. The agent informed plaintiff that it was necessary that he sign a waiver under the Federal statute requiring live stock to be unloaded for food or rest within twenty-eight hours, whereupon plaintiff signed the waiver, in accordance with the provisions of the statute permitting the time to be extended to thirty-six hours before unloading.

Plaintiff testified that he showed the shipping instructions to the agent, and told him that he would not be able to sell the hogs if they were unloaded in public stockyards or pens at Kansas City, which was the destination under the bill of lading.

According to the testimony adduced by the carrier, the shipment of a carload of live stock from Gurdon to Kansas City would be en route, under ordinary conditions, more than fifty hours.          •

Defendant's counsel objected to the introduction of the testimony about the agreement to put the notation on the waybill, on the ground that it was in conflict with the Federal statute requiring the unloading of live stock in transit.

There was no proof adduced tending to show whether or not the stock was unloaded prior to reaching its destination at Kansas City, but the proof shows that it was unloaded there, and that Black & Atchinson refused the consignment on that account, their contract with plaintiff to accept the consignment being dependent upon the stock not being unloaded in a public pen or at the stockyards. Mr. Black testified that, under their method of doing business, they could not use hogs thus unloaded in public pens, for the reason that there was danger of exposure to disease,

There was a verdict for the plaintiff for the amount of damages named in the complaint, and the defendant has prosecuted an appeal to this court.

It is earnestly insisted that the court erred in the admission of testimony, and that, if the plaintiff be permitted to recover damages in the case, it will be, according to the undisputed evidence, upon an alleged agreement which is clearly in violation of the Federal statute. U. S. Comp. Stat. 1918, § 8651.

It must be conceded that, if the recovery sought is based upon a contract which is in conflict with the Federal statute, the contract is void, and there can be no recovery. This principle has been recognized in one of our own decisions, though not expressly so decided. *St. L. I. M. & S. Ry. Co.* v. *Davenport*, 97 Ark. 82. See, also, *Webster* v. *Union Pacific R. Co.*, 200 Fed. 597; *B. & O. R. Co.* v. *United States*, 220 U. S. 94. The statute operates as a restriction upon the right of contract between the shipper and the carrier, and this restriction cannot be disregarded and contractual rights built upon it. *B. & O. R. Co.* v. *United States, supra.* We think, however, that the right to recover is not based upon a contract in conflict with the statute, but is based upon the conduct of the carrier, which misled the shipper to his detriment. *St. L. & S. F. R. Co.* v. *Vaughan*, 88 Ark. 138; *C. R. I. & P. Ry. Co.* v. *Butler*, 132 Ark. 37; *C. R. I. & P. Ry. Co.* v. *Stallings*, 132 Ark. 446.

The plaintiff testified that the railroad agent told him that the shipment would go through to Kansas City without unloading, provided he would sign a release so that there would be no unloading within thirty-six hours. There is no proof that the plaintiff knew anything about the length of time it would take to complete the shipment through to Kansas City, and the conduct and statement of the agent necessarily constituted an assurance that there would be no occasion to unload before the shipment reached destination. Moreover, the proof does not show that there was any contract to disregard the requirement

to unload within thirty-six hours, nor does it show whether or not the stock was unloaded before reaching Kansas City. The only proof as to unloading is that the hogs were unloaded in the public pens at the stockyards at Kansas City. Now, the agreement was that there should be no unloading at Kansas City, the destination, and this agreement constituted no violation of the statute, for it was within the legal right of the carrier to perform an agreement not to unload at destination, at any particular place or in any particular manner.

Plaintiff testified that he explained to the agent fully why he did not want the hogs unloaded in the pens at Kansas City, and he testified that he showed the agent the shipping instructions from the consignees.

The damages sought to be recovered in this case are special, but the carrier had notice of the circumstances upon which damages might arise, and is liable for violation of its duty. It constituted negligence on the part of the carrier to mislead the shipper to his detriment and to disregard the directions not to unload in the public pens at destination.

Our conclusion is therefore that there is no contract shown in violation of the statute, and that the plaintiff's right to recover has been established by sufficient testimony.

The judgment is therefore affirmed.