**SOUTHERN PACIFIC COMPANY,**
Appellant,

v.

H. ROTHSTEIN & SONS, Appellee.

No. 13209.

Court of Civil Appeals of Texas.

San Antonio.

June 26, 1957.

Rehearing Denied July 24, 1957.

Keys, Russell, Keys & Watson, Corpus Christi, for appellant.

Ward & Brown, Corpus Christi, for appellee.

BARROW, Justice.

The parties, H. Rothstein & Sons, a private corporation, and Southern Pacific

Company, a common carrier, will be referred toı as plaintiff and defendant, as in the trial court. This suit was brought by plaintiff against defendant, as initial carrier, to recover for loss and damages resulting from delay in delivering four cars of lettuce shipped by Fred R. Bright Company from El Centro, California, to plaintiff, H. Rothstein & Sons, at Philadelphia, Pennsylvania, by uniform bill of lading. The shipper's instructions to the carrier, noted on the bills of lading, were to route and transport the cars via Southern Pacific, Rock Island and Pennsylvania Railroads. The bills of lading contained the usual clause providing, among other things, that the carriers should not be liable for loss or damage caused by delay in delivery resulting from. riots and strikes.

The suit is on four counts. The first count involved one car which was settled by agreed judgment. Count II involved Car PFE–92056, containing 318 crates of lettuce, bill of lading issued to shipper January 31, 1951. The car departed from El Centro, California, on February 1, 1951, at 12:10 A.M. and arrived in Philadelphia on February 11, 1951, at 11:00 P.M., in time for the market February 12, 1951. In the usual course of transportation, the car should have been delivered to plaintiff in Philadelphia for the market February 8, 1951. The carrier did not transport the car by the route called for, but instead the car was delivered to the Toledo, Peoria & Western Railroad on February 8, 1951, at 12:30 P.M., which carrier transported it to Effner, Indiana, and there delivered it to the Pennsylvania Railroad February 8, 1951, at 6:00 P.M. Plaintiff was not notified of such change in the route and did not know of the whereabouts of the car between February 4, 1951, and February 9, 1951. The wholesale market value of the lettuce in this car at Philadelphia, between February 8 and February 12, 1951, declined $874.50.

Count III involved Car PFE–44846. Count IV involved Car PFE–42497. The facts concerning these cars were the same as in Count II, with the following difference: They were billed out on January 30, 1951, departed on January 31st, at 12:10 A.M. and arrived in Philadelphia at the same time the other car arrived. In the usual course of transportation they should have arrived in time for the February 7, 1951, market. Due to freezing in transit, the lettuce in these cars was damaged. The wholesale market value of the lettuce in Car PFE–44846, if delivered in good condition on February 7, 1951, in Philadelphia, would have been $3,498.00. In its damaged condition, as the lettuce was delivered on February 12, 1951, its wholesale market value was $1,551.25, leaving a difference of $1,946.75. The wholesale market value of this lettuce, had it arrived in good condition in Philadelphia on February 12, 1951, would have been $2,067, making a difference of $515.75. The wholesale market value of the lettuce in Car PFE–42497, if delivered in good condition in Philadelphia on February 7, 1951, would have been $3,498. In its damaged condition, when delivered on February 12, 1951, its wholesale market value was $1,943.25, leaving a difference of $1,554.75. The wholesale market value of the lettuce in this car, had it arrived in good condition on February 12, 1951, would have been $2,067, making a difference of $123.75.

A jury being waived, the trial court rendered a take nothing judgment against plaintiff on Count II, and rendered judgment against defendant on Count III and Count IV, for the difference between the wholesale market value of the lettuce had it arrived in good condition on February 7, 1951, and its wholesale market value in its then condition on February 12, 1951. Both parties have appealed.

It is plaintiff's contention that the judgment in its favor on Counts III and IV is correct, but that the trial court erred in the take nothing judgment on Count II, in that the judgment should have been in favor of plaintiff for the difference in the market value of the lettuce on February 8, 1951, and its market value on February 12, 1951, plus interest. On the other hand, the defendant contends that the judgment in its

385

favor on Count II is correct, but that the trial court erred in the judgment against it on Counts III and IV, for the difference in the market value of the lettuce on February 7, 1951, and February 12, 1951, and argues that the judgment should have been for the difference between the market value had it arrived in good condition on February 12, 1951, and its market value on said date in its damaged condition.

The defendant seeks to excuse the delay in transportation on the ground of a work stoppage amounting to a strike existing in the Chicago and St. Louis areas, which in turn caused embargoes to be placed upon shipments by connecting carriers in those areas. The trial court found that the delay was caused by such striking condition. The evidence shows that on or about December 13, 1950, there was a sudden and unauthorized strike or work stoppage of yard switchmen in these areas, which was not characterized as a strike by the unions, because employees involved claimed they were sick, and that on account thereof, on December 15, 1950, King's Order No. 41 was issued pursuant to I. C. C. authority, by virtue of which railroads were authorized to disregard routing shown on waybills and reroute traffic so as to expedite the movement. The order further provided that the carrier "shall notify each shipper at the time each car is rerouted or diverted and shall furnish to such shipper the new routing * * *." On January 15, 1951, the order was extended to February 15, 1951. The trial court found that the carrier did not give notice to the shipper at the time the shipment was tendered at El Centro, California, that it would be delayed, and also found that the carrier did notify plaintiff that, under authority of said King's Order No. 41, the cars would be transported via Chicago, South Shore & South Bend, B. & O. and Pennsylvania Railroads; that the carrier did not so route the cars, but routed them over the Peoria & Western Railroad to the Pennsylvania, and that the plaintiff did not know the whereabouts of the cars from February 4, 1951, to February 9, 1951.

The evidence supporting these findings is undisputed, with the exception of the finding that the carrier failed to give notice to the shipper at the time the shipments were tendered. There is no evidence in the record that the carrier either did or did not notify the shipper of the strike.

A common carrier, in the absence of a special contract, is bound to transport goods with reasonable diligence, care and dispatch, and is liable for unexplained unreasonable delay. The shipper has a right to expect that his goods will be transported and delivered in the usual course of transportation, and the carrier is held liable for the consequences of its failure to do so, unless the carrier be excused for such failure by circumstances which prevent such transportation and delivery. 13 C. J.S. Carriers § 191, p. 392.

A strike or mob violence or interference may constitute such an excuse, 13 C.J.S. Carriers § 202, p. 407; Panhandle & S. F. Ry. Co. v. Thompson, Tex.Civ.App., 235 S.W. 913 (error dismissed), and does constitute such excuse where the bill of lading so provides. 13 C.J.S. Carriers § 98, p. 188. However, it is the duty of the carrier to inform the shipper of any cause likely to delay transportation, which is within its knowledge or within its fair and reasonable means of knowledge, and, if it fails to do so, a delay in the transportation of the goods will not be excused. Ott v. Atchison, T. & S. F. R. Co., 102 Kan. 254, 169 P. 957; Holland v. Hines, Mo.App., 234 S.W. 366; St. Louis & S. F. R. Co. v. Vaughan, 88 Ark. 138, 113 S.W. 1035; Texas & P. R. Co. v. Moore, Tex.Civ.App., 119 S.W. 697; Chicago, R. I. & P. Ry. Co. v. Stallings, 132 Ark. 446, 201 S.W. 294; Panhandle & S. F. Ry. Co. v. Liske Grain Co., Tex.Civ.App., 13 S.W.2d 144; Atchison, T. & S. F. Ry. Co. v. Jarboe Livestock Commission Co., 10 Cir., 159 F.2d 527; 13 C.J.S. Carriers § 199.

The evidence in this case, from defendant's own witness, shows that the strike relied upon was in progress in the areas

mentioned long prior to the time the shipments were tendered to defendant, and that at the time they were tendered, railroads in the areas affected had issued embargoes as a result thereof. The burden was on the defendant to show, not only the existence of the strike but also that it gave notice to the shipper at the time of shipment, and not having done so it cannot rely on the strike as an excuse for the delay.

The conclusion is inescapable that there was an unreasonable delay in the delivery, and that as a result thereof the plaintiff has been damaged by the decline in the market value of the lettuce during the period of the delay. The trial court erred in rendering the take nothing judgment on the second count and should have rendered judgment in favor of plaintiff and against defendant for the sum of $874.40, together with interest at the rate of 6% per annum from the 12th day of February, 1951, to January 17, 1957. The trial court's judgment was correct on Counts III and IV.

The trial court made further findings of fact that the usual and customary running time of cars moving from El Centro, California to Philadelphia, Pennsylvania, during the period these cars were in transit was twelve or thirteen days. That no cars during the time these cars were in transit moved from El Centro, or other Southern California points, to Philadelphia, Pennsylvania, in a shorter period than 12 or 13 days via any route.

These findings are immaterial. The court simply found that during the period of the strike all traffic was delayed. The fact that other shipments were delayed during this period and that perhaps the shippers were also damaged, does not even tend to establish the usual transportation time under normal conditions, on which the plaintiff had the right to rely, in the absence of notice of existing conditions.

Accordingly, the judgment of the trial court on Counts III and IV is affirmed. The judgment on Count II is reversed and here rendered that plaintiff recover judg-ment against defendant for the sum of $874.50, together with interest thereon at the rate of 6% per annum from February 12, 1951, to January 17, 1957.

The judgment is affirmed in part and reversed and rendered in part.